978 P.2d 247

**In the Matter of Butler Trailer Manufacturing and Neil Butler.**

**BUTLER TRAILER MANUFACTURING and Neil Butler, Petitioners–Appellants,**

v.

**STATE of Idaho, Respondent.**

No. 24263.

Court of Appeals of Idaho.

May 7, 1999.

Rehearing Denied May 27, 1999.

---

A. Bruce Larson, Soda Springs, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen, argued.

SCHWARTZMAN, Judge.

Butler Trailer Manufacturing and Neil Butler appeal from a district court order denying their motion for the return of property pursuant to Idaho Criminal Rule 41(e). Following a hearing, the district court held that Butler had failed to show that any of the allegedly missing items were seized by the state during the execution of the search warrant.

## I.

### FACTS AND PROCEDURE

On October 3, 1996, a team of state agents and law enforcement officers served a search warrant on the premises of Neil Butler and Butler Trailer Manufacturing. Although the search warrant had been obtained by Eric Elle, a member of the Idaho Department of Transportation, the search team included a number of police officers from the Idaho State Police (I.S.P.) and the Franklin County Sheriff's Department, as well as representatives from other state agencies. While the police officers secured the area, the state agents conducted the search. Portions of the execution of the search warrant were video tape recorded by an I.S.P. officer, but the video camera was turned off and on, leaving the officer unsure whether the tape accurately disclosed all of the property that was seized.

Elle and an I.S.P. officer provided Butler's son with a receipt and inventory (inventory) for the over one thousand items seized during the search. The inventory only described the items taken in the most general of terms as follows:

| Description of Evidence/Property | Location Found |
|---|---|
| 30 File Folders & Contents | Black Cabinet |
| 57 Log Books | " " |
| Misc Bills of Sale | " " |
| Copy MSO/BOS KW Glider | |
| | |
| 13 N.C. mfr License Plates | On Various vehicles |
| 7 ID TFTC Rcpts | Living Rm |
| 1 NC Title # 1326732090 | " " |
| 1 " " # 12639002 | " " |
| Contents Bottom Drawer Beige | Beige File |

The seized items were placed in the back of Elle's car and transported to the Pocatello office of the Idaho Department of Transportation. Another agent then took a portion of the documents to Boise to be reviewed. When he discovered two one-hundred-dollar bills inside a seized envelope, the agent inventoried and returned them to Elle who, in turn, returned the money to Butler.

On October 26, 1996, Butler filed a civil proceeding as a motion for the return of his property pursuant to I.C.R. 41(e).[1] The motion specifically requested the return of documents relating to alleged political corruption in Franklin County which had supposedly been taken from the top drawer of the beige filing cabinet. As a result of this motion, Butler and the state entered into a stipulation in which the state agreed to return all the original documents. According to this *first stipulation*, the state could use copies of six of the documents in lieu of the originals. The remainder of the seized items would not be used as "evidence in any criminal or administrative proceeding, except to identify the documents and file[s] which were seized pursuant to the within search warrant." Numerous documents were then copied for inventory purposes and the originals were returned to Butler. During the pendency of

the 41(e) motion, criminal charges were filed against Butler. He then filed a motion to suppress in that case which was resolved by a *second stipulation* wherein the state agreed that none of the items seized during the search would be used at any stage of the criminal proceedings.

Although a large number of files had been returned to Butler, he maintained that certain items were still missing. Therefore, a hearing was held in the civil action to determine whether these allegedly missing items had, in fact, been seized during the execution of the search warrant, thus necessitating their return. At the hearing Butler testified that his video camera, which was probably laying on his safe when the search occurred, no longer contained a video tape, and that he is the only one with access to his house who touches the camera.[2] Butler's son, who was present during the search, testified that although the camera was on top of the safe, he did not see anyone remove a video tape. Butler also testified that although the state had returned fourteen trip envelopes,[3] various amounts of cash had been taken from them. He claimed that these envelopes, which had been given to him by employees following their business trips, were clearly marked on the outside with the amount of cash they had contained. However, Butler admitted that he had not actually inspected the contents of the envelopes prior to their seizure by the state.

In contrast, Elle testified that *all* of the items seized during the search had been

1. I.C.R. 41(e) states,
 **Motion for Return of Property.** A person aggrieved by a search and seizure may move the district court for the return of the property on the ground that the person is entitled to lawful possession of the property and that it was illegally seized. The motion for the return of the property shall be made only in the criminal action if one is pending, but if no action is pending a civil proceeding may be filed in the county where the property is seized or located. The court shall receive evidence on any issue of fact necessary to the decision on the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for

hearing after a complaint, indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

2. Although the motion for return of property did not mention a video tape, Butler testified at the hearing that it was missing following the search.

3. Trip envelopes were described as manila envelopes containing cash which are given to truck drivers before a trip. Drivers are to keep receipts for cash spent inside the envelope and record such expenditures on the outside. These envelopes are returned at the end of a trip with the proper receipts and any excess cash left inside.

returned to Butler with the exception of thirteen license plates, which the court then ordered the state to return. The other two state agents involved in the search each testified that they did not seize a video tape and that all seized items had been returned, including the money ($200) found in one of the trip envelopes.

Following the hearing, the district court determined that in order to prevail, Butler was required to show that 1) he was legally entitled to possession of the items seized; and 2) that the items were illegally seized. It then found that Butler had made an insufficient showing regarding the existence or taking of these items during the execution of the search warrant. The court based its decision upon Butler's failure to sufficiently describe the items allegedly taken, including his inability to estimate the total amount of money, if any, contained in the trip envelopes. The court also noted that no one saw the state agents or police take the allegedly missing files or video tape.

Notwithstanding the fact that the district court had determined that the purportedly missing items had not been seized, it then proceeded to address the lawfulness of the search. The court limited its analysis to the two claims Butler had addressed during the hearing and held that the search warrant adequately described the items to be seized, and that the state had not exceeded the scope of the warrant during the search. Because Butler failed to argue or offer any support for his other assertions of illegal conduct, the district court declined to address them. The court then concluded that the property receipt reflected an adequate inventory of the items seized which could be corroborated by the police video tape. The court also stated that even if the inventory was insufficient, Butler had failed to show that he had been harmed in any way.

Butler filed a motion for relief from judgment and a notice of appeal. The motion for relief was based upon Butler's assertion that "a number of the issues decided by the Court were rendered moot by the Stipulation of the parties...." The district court denied this motion and held that the legality of the search warrant was at issue because it treated the I.C.R. 41(e) motion as a motion to suppress in the criminal case. This order was thereafter augmented into the record for consideration on appeal. *See* I.A.R. 17(e)(C).

## II.

## BECAUSE THE ISSUE WAS RENDERED MOOT, THE DISTRICT COURT ERRED WHEN IT ADDRESSED THE LAWFULNESS OF THE SEARCH

■ As part of its analysis of the totality of the circumstances of the case, the district court ruled that it must determine whether the warrant and search were lawful. Later, in his motion for relief from judgment, Butler objected to the court's determination of issues which he argued had been rendered moot by the parties' stipulations in the criminal case. When parties to an action resolve an issue through an agreed upon stipulation, the outcome is controlled by the agreement and the issue becomes moot. *Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 570, 903 P.2d 730, 735 (1995); *Gunter v. Bd. of Trustees, Pocatello Sch. Dist. No. 25*, 123 Idaho 910, 916, 854 P.2d 253, 259 (1993).

■ In the instant case, the parties' stipulations obviated the necessity for a full and fair examination of the lawfulness of the warrant and search. Because the state had previously agreed not to use any of the seized items as evidence in a criminal or civil proceeding, neither party had cause to present evidence or argument on this issue. Although Butler had filed a motion to suppress in the criminal case, the issue had been rendered moot by the parties' second stipulation. The only issue properly before the district court at the time of the hearing in the civil case was whether all of the seized items had been returned by the state. Accordingly, the district court's order on Butler's motion for relief regarding the lawfulness of the warrant and search is vacated.

## III.

### ALTHOUGH THE INVENTORY WAS WOEFULLY INADEQUATE, THE DISTRICT COURT DID NOT ERR WHEN IT FOUND THAT THE ALLEGEDLY MISSING ITEMS HAD NOT BEEN TAKEN BY THE STATE DURING THE EXECUTION OF THE SEARCH WARRANT

### A. Standard Of Review

 This Court will accept the trial court's findings of fact when they are supported by "substantial, competent though conflicting evidence, however meager." *Rueth v. State*, 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982), *quoting Watkins v. Watkins*, 76 Idaho 316, 325, 281 P.2d 1057, 1062 (1955). The credibility and weight to be given evidence is in the province of the trier of fact and the findings made by the trial judge will not be set aside unless clearly erroneous. *Pointner v. Johnson*, 107 Idaho 1014, 1018, 695 P.2d 399, 403 (1985). However, on appeal this Court freely reviews the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Riley v. Rowan*, 131 Idaho 831, 833, 965 P.2d 191, 193 (1998), *citing Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990).

### B. Analysis

In considering an I.C.R. 41(e) motion for the return of property, the court, as the trier of fact, must determine what was actually seized by the state. It is assisted in making this determination by a proper inventory of the seized items created at the time of the seizure. This inventory is required by I.C. § 19–4413 which states that,

> [w]hen the officer takes property under the warrant, he must give a receipt for the property taken *(specifying it in detail)* to the person from whom it was taken by him, or in whose possession it was found; or, in the absence of any person, he must leave it in the place where he found the property.

(emphasis added). *See also* Idaho Code § 19–4415 and I.C.R. 41(d). An inventory generated during the search, or promptly thereafter, can later be used by the state as additional evidence to help verify what was actually seized. In the *instant case, if* law enforcement officers had complied with I.C. §§ 19–4413, 4415 and I.C.R. 41(d), by specifying what was taken, there would be a written record to support their assertions that all seized items had been returned to Butler. However, by Elle's own admission, over one thousand documents were taken during the search of the Butler residence, yet the inventory receipt consisted of only two small slips of paper that vaguely identified the numerous items taken. Seized files were simply described as "30 file folders & contents," without any indication of what the contents actually were. The inventory receipt also acknowledged that the state had seized the "[c]ontents bottom drawer Beige...Beige file," but failed to give any indication of what was taken from that bottom drawer. These statements obviously do not "specify in detail" the property taken. Instead, they simply express *where* the items were taken from, leaving open the relevant question of *what* was actually taken. This type of woefully inadequate inventory merely encourages litigation. Although we recognize that it is sometimes impractical for state agents to individually list each item as it is seized, this does not justify an over-broad, general description which fails to even remotely identify what was taken.

 Ultimately the determination of what was seized during the search is a question of fact. Therefore, we will not disturb the decision of the district court unless it is clearly erroneous. Although the inventory was clearly deficient, the district court's determination that the allegedly missing items had not been seized by the state is supported by competent and substantial evidence introduced at the hearing. The state agents who conducted the search testified that they did not seize the missing files or tape and returned the only cash discovered inside the seized trip envelope. Butler failed to introduce testimony or evidence which sufficiently rebuts the state's initial assertion that all of the seized items had already been returned.

Moreover, Butler's own testimony and pleadings support the state's claim that the missing items were not seized. In his motion for return of property, Butler asserted that the missing files had been located in the *top* drawer of his beige file cabinet. In contrast, the inventory receipt states that only items from the *bottom* drawer of that cabinet were seized. Furthermore, Butler admitted that he had not inspected the trip envelopes prior to the search and, therefore, could not be sure how much money was missing. He also failed to present the returned trip envelopes with the alleged notations as evidence. Thus, Butler did not provide any evidence establishing that the seized envelopes ever contained cash. Finally, Butler's only evidence regarding the video tape was his assertion that the camera was "probably" on top of the safe and his son's testimony that he saw the video camera on top of the safe, but did not see anyone remove a tape. Hence, there was insufficient evidence introduced to show that the tape was taken by the state.

We wish to *emphasize* that this Rule 41(e) hearing could have been significantly expedited had an inventory with a detailed account of all property taken been included with the formal return on the warrant as required by I.C. § 19–4415 and I.C.R. 41(d).

Nevertheless, in light of the substantial and competent evidence presented during the hearing, we affirm the district court's holding that the allegedly missing items were not seized by the state during the execution of the search warrant.

## IV.

### CONCLUSION

We affirm the district court's factual determination that the items in controversy were not taken during the execution of the search warrant and its order denying Butler's motion for the return of that property. However, we vacate that portion of the order regarding the lawfulness of the warrant and search. No costs or attorney fees are awarded on appeal.

Chief Judge PERRY and Judge Pro Tem R.B. WOOD, CONCUR.