281 F.3d 1014
 Cornelius "Neil" BUTLER, Jr. Butler Trailer Manufacturing Company, Plaintiffs-Appellants,
v.
Eric ELLE, individually and in his official capacity as an investigator with the Idaho Transportation Department; Scott Shaw, individually and in his official capacity as Franklin County Sheriff; Don B. Beckstead, individually and in his official capacity as Franklin County Sheriff; Jay B. Heusser, individually and in his official capacity as Mayor of Preston; Mark Beckstead, individually and in his official capacity as a police officer for the Preston Police Department; Ned Robert Burton, individually and in his official capacity as a police officer for the Preston Police Department; Jay R. McKenzie, individually and in his official capacity as Franklin County Prosecutor, Defendants-Appellees.
 No. 99-35393.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 2001.
 Filed February 26, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Robert E. Rader, Jr., Rader, Campbell, Fisher & Pyke, Dallas, TX, for the plaintiffs-appellants.
 David H. Shipman, Hopkins, Roden, Crockett, Hansen & Hoopes; Blake G. Hall, Anderson, Nelson, Hall, Smith, Idaho Falls, ID, for the defendants-appellees.
 Appeal from the United States District Court for the District of Idaho; B. Lynn Winmill, District Judge, Presiding. D.C. No. CV-98-00046-BLW.
 Before: LAY,* TROTT and BERZON, Circuit Judges.
 Per Curiam Opinion; Partial Concurrence and Partial Dissent by Judge LAY.
 PER CURIAM.
 
 
 1
 This is an appeal from an entry of summary judgment by the United States District Court for the District of Idaho in favor of seven local government officials against whom an Idaho businessman brought charges under the United States and Idaho Constitutions, 42 U.S.C. §§ 1983, 1985(3), and various Idaho statutes. We affirm in part and reverse in part.
 
 I. Background
 
 2
 Butler Trailer Manufacturing Company, Inc. ("Butler Trailer") is a North Carolina corporation which operates manufacturing plants in North Carolina and Idaho. Cornelius "Neil" Butler, Jr. ("Butler") lives in Franklin County, Idaho, and manages Butler Trailer's plant there. This case arises from an October 3, 1996 search of Butler's home and Butler Trailer's plant in Franklin County.
 
 
 3
 At the time of the facts that gave rise to this case, Butler was a vocal critic of what he called police and governmental corruption in Franklin County. To that end, he had collected evidence and written articles alleging abuse of power by various government officials. Butler now claims that seven of these individuals used the power of their offices to retaliate against him by pursuing a meritless criminal investigation and prosecution of him for evading state sales and use taxes.
 
 A. Facts
 
 4
 On September 11, 1996, Eric Elle, a Motor Vehicles Investigator with the Idaho Department of Transportation,[1] observed Butler driving a pick-up truck with North Carolina manufacturer's license plates. Elle believed the plates to be invalid in Idaho. After conducting additional research, Elle came to believe that Butler and Butler Trailer failed to pay required title and ton-mile taxes on their vehicles. Elle contacted Franklin County Prosecutor, Jay McKenzie, to ask that an inter-agency task force be formed to further investigate the matter. McKenzie later helped Elle prepare an affidavit in support of an application for a search warrant of Butler's home and business.
 
 
 5
 Based on Elle's affidavit, a Franklin County Magistrate issued the warrant, and on October 3, 1996, police searched Butler's property. Although the warrant was obtained by Elle, the search team included members of the Idaho State Police and Franklin County Sheriff's Departments, as well as representatives from other state agencies and the FBI. During the search, officials seized more than one thousand items, including records and papers, trip envelopes containing cash, and North Carolina manufacturer license plates.
 
 
 6
 After the search, Prosecutor McKenzie filed state criminal charges against Butler and Butler Trailer. In that prosecution, Butler moved to suppress the use of any evidence obtained in the search on grounds that the search was unlawful. Butler also initiated a separate proceeding under Idaho Rule of Criminal Procedure 41(e),[2] demanding the return of all property seized during the search. McKenzie stipulated that the evidence obtained in the search would not be used in that or any other criminal prosecution of Butler. Despite McKenzie's stipulation, the state district court, in a Memorandum Decision on Butler's Rule 41(e) motion, found that the search warrant was legally issued based upon probable cause. At the conclusion of the prosecution's case, the state court issued a judgment of acquittal in favor of Butler.
 
 
 7
 The Idaho Court of Appeals later overturned the lower court's favorable-to the-State's finding of probable cause on the ground that McKenzie's stipulation mooted the issue. See In re Butler Trailer Mfg., 132 Idaho 687, 978 P.2d 247, 250 (App. 1999). This ruling post-dated the district court's judgment in this matter, and the district court was therefore deprived of the development in making its decision.
 
 
 8
 In February 1998, Butler and Butler Trailer brought suit against seven local and state government officials in the United States District Court for the District of Idaho, alleging various federal and state claims arising out of the search and seizure of his property and the state criminal action that followed.[3] The heart of the charges was that these officials used the power of their respective offices to punish and silence Butler. Specifically, the complaint alleged that Motor Vehicles Investigator Elle made affirmative misrepresentations in his affidavit to obtain the search warrant for Butler's property. In addition, Butler claimed that in instigating and executing the search, Elle unlawfully subverted the state tax code's notice and assessment procedures. Butler also complained that Prosecutor McKenzie violated the same tax code provisions by advising Elle to obtain a warrant and conduct a search for evidence of Butler's supposed tax evasion. The complaint further alleged that McKenzie's prosecution of Butler was malicious in contravention of Idaho law.
 
 
 9
 Claims against Preston City Chief of Police Chief Scott Shaw and Officers Mark Beckstead and Ned Burton were based on their involvement in what Butler alleged was an illegal search. The complaint implicated Sheriff Don Beckstead[4] for using the power of his office to trigger the allegedly wrongful investigation and prosecution of Butler. Sheriff Beckstead, along with Preston City Mayor Jay Heusser, were dually named in the complaint for slandering Butler by publicly stating that the investigation into his affairs was for drug trafficking.
 
 
 10
 Finally, the complaint alleged that all of the defendants conspired to deprive Butler of his constitutional rights. The district court entered summary judgment against Butler and Butler Trailer on all claims.
 
 
 11
 The district court concluded that the lawfulness of the warrant and the search was res judicata because of the state trial court's finding that the warrant was properly issued based on probable cause and that the officers did not exceed the scope of the warrant or fail to return seized items. However, after the district court issued its order in this case, the Idaho Court of Appeals, as noted earlier, overturned the state trial court findings. The appeals court determined that because McKenzie stipulated in the state case that the evidence obtained in the search would not be used in a criminal prosecution of Butler, the validity of the warrant and search was moot. Because the appeals court has determined that the question is moot, preclusive effect cannot be given to the trial court's finding with respect to the warrant and the search. See Ornellas v. Oakley, 618 F.2d 1351, 1356 (9th Cir.1980) ("A reversed or dismissed judgment cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel.").
 
 B. Standard of Review
 
 12
 This court reviews a district court's entry of summary judgment de novo. See Boston Mut. Ins. v. Murphree, 242 F.3d 899, 902 (9th Cir.2001).
 
 II. Federal and State Constitutional Claims
 A. Background
 
 13
 A plaintiff may bring suit under § 1983 to redress violations of "rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws" that occur under the color of state law. 42 U.S.C. § 1983. Butler's[5] claims under § 1983 are based on defendants' alleged violation of his First, Fourth, and Fifth Amendment rights under the United States Constitution.[6] Butler also makes his search and seizure and due process arguments under the Idaho Constitution.
 
 
 14
 Government officials sued in their individual capacities under § 1983 may raise the affirmative defenses of qualified or absolute immunity. Qualified immunity generally protects government officials in the course of performing the discretionary duties of their offices. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Such immunity is an affirmative defense that bars civil liability damages insofar as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.
 
 
 15
 The first step in evaluating a qualified immunity defense is to determine whether the plaintiff has shown that the action complained of constituted a violation of his or her constitutional rights. See Sonoda v. Cabrera, 255 F.3d 1035, 1040 (9th Cir.2001). If the court is satisfied that a constitutional violation occurred at the hands of a government official, the second step is to determine: (1) whether the violated right was clearly established, and (2) whether a reasonable public official could have believed that the particular conduct at issue was lawful. See id. As such, the process of determining qualified immunity is an examination of the "objective legal reasonableness" of a government official's conduct. Harlow, 457 U.S. at 819, 102 S.Ct. 2727.
 
 
 16
 Absolute immunity applies to a government official's actions in the course of fulfilling his or her legislative, executive, or prosecutorial duties. See id. at 807, 102 S.Ct. 2727. In contrast to qualified immunity, absolute immunity does not require the official to have acted reasonably or in accordance with clearly established law. For purposes of this case, we note that absolute immunity is afforded to prosecutors for initiating a criminal case and presenting it at trial. See Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). A prosecutor also is absolutely immune for conduct in presenting evidence at a probable cause hearing for a search warrant. See Burns v. Reed, 500 U.S. 478, 487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).
 
 B. McKenzie
 1. Search and Seizure
 
 17
 The district court dismissed the § 1983 claims against Franklin County Prosecutor McKenzie in his individual capacity based on absolute and qualified immunity. On appeal, Butler argues that the district court erred with respect to that part of his claim based on illegal search and seizure because McKenzie's advice to Elle to obtain a warrant and conduct a search was investigatory, rather than prosecutorial, and therefore not protected by absolute immunity.
 
 
 18
 Insofar as the claims against McKenzie rely on the Fourth Amendment, we need not advance to the issue of qualified immunity because we find no genuine issue of material fact suggesting that his actions violated Butler's right to protection against unreasonable search and seizure. McKenzie simply advised Elle that if he "developed a case to a point that it was necessary to go get evidence from Mr. Butler, that it would probably be necessary to do so with a search warrant." In advising Elle to obtain a search warrant for evidence of Butler's alleged tax law infractions, McKenzie did not subject Butler to an unreasonable search and seizure. In short, we fail to see how such advice violates any law, constitutional or otherwise. Even if the warrant itself was illegal, McKenzie's advice to obtain it did not encroach on Butler's rights. Accordingly, Butler's § 1983 claim against McKenzie based on the Fourth Amendment fails, and summary judgment in McKenzie's favor is affirmed. For the same reason, we also affirm summary judgment in McKenzie's favor on Butler's search and seizure claim under the Idaho Constitution.
 
 2. Procedural Due Process
 
 19
 Butler's § 1983 claim against McKenzie includes allegations of a violation of procedural due process principles under the Fifth Amendment to the United States Constitution and Article I, § 13 of the Idaho Constitution. The essence of this claim is that McKenzie is liable for such a violation by allegedly assisting Elle in improperly collecting a state tax deficiency. Because we conclude as a matter of law that Elle did not violate Butler's constitutional due process rights in this regard, Butler's derivative claim against McKenzie necessarily fails also. Thus, we affirm the district court's grant of summary judgment in favor of McKenzie on this charge.
 
 
 20
 Summary judgment in McKenzie's favor on Butler's state due process claim also is affirmed for the reasons articulated below.[7]
 
 C. Elle[8]
 1. Procedural Due Process
 
 21
 Butler maintains that Elle, violated the statutory procedures for assessing and collecting a state tax deficiency against him, and in doing so, denied Butler's federal constitutional procedural due process rights. We conclude that there is no genuine issue of material fact that Elle violated Butler's due process rights and affirm the district court's entry of summary judgment in favor of Elle on this claim.
 
 
 22
 The Idaho Sales Tax Act requires the Idaho Tax Commission to provide notice to the taxpayer of any deficiency before commencing proceedings for collection of such taxes. See Idaho Code §§ 63-3629, 63-3045. Such notice triggers an appeals process wherein the taxpayer has the opportunity to show that the taxes in question were in fact paid, or were not in fact due. See id. Butler maintains that Elle subverted the state tax code by failing to follow the notice and assessment process and consequently violated Butler's rights to procedural due process.
 
 
 23
 The record confirms that Elle did not follow the civil procedures for assessing and collecting a sales tax deficiency. Rather, Elle served as the complainant to induce the Franklin County Prosecutor to file criminal tax charges against Butler. Such criminal charges necessarily include an element of fraud.
 
 
 24
 However, we find nothing in the Idaho Tax Code that requires the State Tax Commission or its agents to proceed solely under the civil statutes for assessment and collection. Nor does Idaho law — or, certainly federal constitutional law — require a governmental unit to follow the civil administrative process for tax assessment and collection as a prerequisite to proceeding under the criminal statutes. In other words, the state administrative procedures upon which Butler relies are irrelevant to the issue at hand.
 
 
 25
 We do note that Butler was afforded procedural due process in the criminal case against him. Once state criminal tax charges were filed, Elle received notice by the state court to appear and was given a hearing on the criminal tax charges against him. Through this process, the case was dismissed by the state court. Accordingly, we find no genuine issues of material fact and therefore no merit to Butler's due process claims under the federal or state constitutions.
 
 2. Search and Seizure
 
 26
 Butler brings also a claim against Elle for illegal search and seizure in violation of the federal and state constitutions. Specifically, Butler argues that Elle submitted false and misleading information in his affidavit to the Magistrate, who then relied upon that information in finding probable cause for the search warrant. Elle maintains in response that Butler's Fourth Amendment claim against him is barred by qualified immunity.
 
 Judicial Deception and Qualified Immunity
 
 27
 In this variety of a Fourth Amendment case, alleging judicial deception in the procurement of a search warrant, we confront a situation where in our circuit a state-of-mind question is embedded in the underlying constitutional issue, i.e., whether or not in allegedly omitting relevant information from his affidavit in support of the application for a search warrant for Butler's property, Investigator Elle acted "with deliberate falsehood or reckless disregard for the truth." See United States v. Stanert, 762 F.2d 775, 781, as amended, 769 F.2d 1410 (9th Cir.1985). As we said in Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir.1995) (quoting Branch v. Tunnell, 937 F.2d 1382, 1387 (9th Cir.1991)), "`if an officer submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth ..., he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.'" Hervey went on not only to establish the need to allege a specific mental element in such judicial deception cases, but also to articulate the proper summary judgment standard:
 
 
 28
 The plaintiff alleging judicial deception must make a substantial showing of deliberate falsehood or reckless disregard for the truth and establish that but for the dishonesty, the challenged action would not have occurred. If the matter survives the summary judgment phase, the matter should go to trial.
 
 
 29
 Id. at 788-89 (citation omitted).
 
 
 30
 A plaintiff "must make (1) a `substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred. If a plaintiff satisfies these requirements, `the matter should go to trial'." See Liston v. County of Riverside, 120 F.3d 965, 972-975 (9th Cir.1997) (quoting Hervey, 65 F.3d at 788-89 (citing Branch, 937 F.2d at 1383)). Materiality is for the court, state of mind is for the jury. Hervey, 65 F.3d at 789.
 
 
 31
 Thus, our cases effectively intertwine the qualified immunity question (1) whether a reasonable officer should have known that he acted in violation of a plaintiff's constitutional rights with (2) the substantive recklessness or dishonesty question. This merger is ultimately appropriate because, as Branch and Hervey recognize, no reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant. Accordingly, should a factfinder find against an official on this state-of-mind question, qualified immunity would not be available as a defense. On the other hand, should the fact-finder find at trial in the officer's favor, i.e., that he did not act dishonestly or recklessly, that officer's conduct would not have violated any clearly established statutory or constitutional rights. In this regard, because the two issues merge, there need be no separate inquiry at trial, and no discrete instructions, on whether Elle is entitled to qualified immunity. If he was reckless or deceitful in preparing the warrant affidavit, then he both violated Butler's rights and is not entitled to qualified immunity.
 
 
 32
 We note that Butler filed his own motion for summary judgment on the judicial deception issue, claiming an entitlement as a matter of law to a judgment based on the facts of this case. The district court ruled against him. He does not appeal this ruling.
 
 
 33
 A Substantial Showing of Actionable Deception
 
 
 34
 At the time of his affidavit in support of the warrant, Elle had been a Motor Vehicle Investigator for the Idaho Transportation Department for eighteen years and was commissioned as a Special Deputy for the Idaho Department of Law Enforcement and the Idaho Tax Commission. Elle Aff.¶ 1, 9. According to his affidavit, Elle considers himself an expert in the area of "regulating the commerce of motor vehicles by dealers and private parties, particularly in dealing with sales and use tax on such vehicles, but also including titling and licensing issues." Elle Aff. ¶ 9. In his position with the transportation department, Elle also is the designated keeper of motor vehicle records. Elle testified that his job requires frequent access to databases containing information on title and registration for motor vehicles in the state. Those databases are searchable by document number, license number, vehicle identification number, or by name. According to Elle's testimony, the more detailed information one inputs when searching these databases, the more accurate and reliable the results.
 
 
 35
 Elle stated in his affidavit that he could "find no record of title for any vehicles in Mr. Butler's name or that of his company." Elle Aff. ¶ 20. He made this assertion after conducting a database search for vehicles titled to "Cornelius Butler," "Butler Trailer," and "Butler Manufacturing." However, Elle did not search under Butler's full name, "Cornelius Butler, Jr.," or the correct name of his company, "Butler Trailer Manufacturing Company."
 
 
 36
 When questioned about why he did not search under the proper names, Elle testified that he used the only names by which he knew Butler and his company. This rationale is to no avail, however, in light of the information Elle possessed at the time he submitted his affidavit. First, the affidavit Elle signed and submitted under oath identified Butler as "Cornelius Butler, Jr." Second, sales documents that Elle possessed at the time he submitted the affidavit showed a vehicle purchased by "Butler Trailer Mfg. Co." These two facts belie the assertion that Elle's search was sufficient.
 
 
 37
 The affidavit also suffers from a second flaw regarding "ton-mile" taxes. Elle affirmatively represented to the Magistrate that no ton-mile taxes had been paid. He based this conclusion on the fact that Butler paid taxes via quarterly reports in 1988, 1989, 1990, and 1991, but did not file such reports in 1992, 1993, or 1994. However, ton-mile taxes may be paid either by quarterly report or by trip permits at the port of entry. Butler in fact paid ton-mile taxes by the latter means for the years in question. Elle was apparently aware of the alternative means of payment, but based on the absence of quarterly reports for those years stated in his affidavit that "no taxes have been paid." Elle Aff. ¶ 22. Elle later testified that because there is no computer database for trip permits purchased at the port of entry, it was impossible for him to ascertain whether Butler had satisfied his ton-mile taxes in this manner. Elle's explanation does not change the fact that he knew that Butler could have paid ton-mile taxes by trip permit, but nevertheless failed to investigate that possibility. Elle's behavior was only compounded when he failed to inform the Magistrate of his incomplete search or of the possibility that the taxes had, in fact, been paid.
 
 
 38
 To defeat Butler's case, Elle vigorously contends that the evidence conclusively refutes the contention that he acted dishonestly or recklessly. In fact, says Elle, the evidence demonstrates that although his search "in hindsight" was incomplete, he acted at all times in good faith based on what he knew when he signed the affidavit for the warrant. In this regard, Elle says he reasonably relied on North Carolina Officials regarding their manufacturer's license plate requirements and on Art Leister of the Idaho Department of Transportation who told him that the absence of certain tax reports raised a reasonable suspicion that Butler may not have paid his taxes. Elle says that the record demonstrates that he was diligent and that his investigation was not objectively unreasonable.
 
 
 39
 And so we come to the bottom line: has Butler succeeded in making a "substantial showing" of judicial deception by Elle, or has he failed? On balance, we conclude that he has met his burden. A reasonable factfinder would be justified in so finding, and thus, we reverse the district court's contrary conclusion. In so doing, we do note again that the district court's analysis was necessarily influenced by the state court magistrate judge's finding of probable cause for the warrant, a determination overruled by the state appellate court after the district court's ruling here.
 
 Materiality
 
 40
 To satisfy the two-part test for submission of a false affidavit, Butler must also make a substantial showing with respect to materiality, i.e., that had Elle been truthful, the warrant would not have issued. Elle contends that even if his affidavit contained the omitted information discussed above, the warrant still would have issued because there was not proof of title for the two vehicles that prompted the investigation of Butler at the onset. This argument is not persuasive. As we have noted, a criminal tax violation in Idaho requires an element of fraud. In assessing whether there was fraud, the difference between an absence of title for two vehicles and an absence of title for a large number of vehicles would certainly be material, as quite likely to influence the decision whether there is probable cause of fraud as opposed to innocent error. We therefore hold as a matter of law that the failures and omissions were material, and that the warrant, based on Elle's affidavit, was issued without probable cause.
 
 3. Qualified Immunity
 
 41
 Under Branch, Hervey, and Liston, we conclude (1) that the warrant could not have issued had the magistrate known the full story regarding Butler's tax status; and (2) that Butler has made a substantial showing that Elle acted recklessly in this case and that there exists in this regard a question of fact yet to be decided. Accordingly, we reverse the grant of summary judgment in favor of Elle on Butler's § 1983 claim insofar as it relates to Elle's violation of the Fourth Amendment. For the same reasons, we reverse the grant of summary judgment in favor of Elle on Butler's state constitutional claim for illegal search and seizure.
 
 
 42
 D. Chief Shaw and Officers Beckstead and Burton — Search and Seizure[9]
 
 
 43
 Butler's § 1983 claims against Preston City Police Chief Shaw and) Officers Beckstead and Burton assert that these individuals violated Butler's constitutional right to be protected against unlawful search and seizure. Butler argues that Chief Shaw was intimately involved in the events leading up to the search and that this involvement, as well as Chief Shaw's assignment of officers to assist in establishing a perimeter for the search, was somehow illegal. As for Officers Beckstead and Burton, Butler argues that these individuals exceeded the scope of their authority to establish a perimeter during the search and also seized personal files, expense money, and other items that were not authorized by the warrant. Butler further maintains that these items were not returned to him.
 
 
 44
 The record shows that the Idaho State Police Department requested assistance from the Preston City Police Department in executing the warrant. Chief Shaw, along with Officers Beckstead and Burton, subsequently participated in the October 3, 1996 search of Butler's property by establishing a perimeter around the premises. There are no facts in the record that suggest these individuals were involved in the investigation of Butler leading up to the search or the decision to bring charges against him, nor is there any evidence in the record that these individuals participated in the physical search of Butler's property. Rather, the facts show that Chief Shaw and Officers Beckstead and Burton limited their activities to establishing a perimeter and securing the premises. Butler has failed to establish a genuine issue of material fact that any Fourth Amendment violations occurred at the hands of these individuals. To the extent these individuals were involved in the execution of the warrant that we have deemed to have been issued without probable cause, they are entitled to qualified immunity. Butler has not shown that these individuals knew or should have known of its defects or that their conduct was otherwise unlawful. See Anderson, 483 U.S. at 641, 107 S.Ct. 3034 (stating that an officer's conduct must be objectively judged in light of the information those officers possessed and clearly established law at the time of the conduct in question). Accordingly, the district court's entry against Butler on his § 1983 claims against these individuals is affirmed. For the same reason, summary judgment is also affirmed in favor of these individuals on the claims for illegal search and seizure under the state constitution.
 
 E. Sheriff Beckstead — Retaliation
 
 45
 Butler also brought a § 1983 claim against Sheriff Beckstead for using the authority of his office to instigate and further the investigation, search, and prosecution of Butler in an effort to retaliate against Butler for his outspokenness against local government corruption. To support his retaliation claim against Sheriff Beckstead, Butler points out that Elle's investigation began only after Sheriff Beckstead threatened Butler and after Sheriff Beckstead conferred with the Idaho State Police about Butler's display of license plates. In sum, Butler contends that Sheriff Beckstead was responsible for triggering the investigation, knew in advance that a search was planned, directed a deputy to participate in the search, and knew the ultimate goal of the investigation was to prosecute Butler for failing to pay taxes. The district court entered summary judgment against Butler on this claim.
 
 
 46
 To make a prima facie case for retaliation, Butler must demonstrate a genuine issue of material fact that Sheriff Beckstead engaged in state action that was "designed to retaliate against and chill political expression." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.1986). As this court has stated, such retaliation by government officials "strikes at the heart of the First Amendment." Id.
 
 
 47
 The record confirms that Sheriff Beckstead openly disliked Butler. Nevertheless, the record falls short of showing that Sheriff Beckstead engaged in any state action that violated Butler's constitutional rights. Even if he did encourage Elle to investigate Butler, there is no evidence that Sheriff Beckstead did so to retaliate for Butler's First Amendment activities. As the district court determined, Sheriff Beckstead was not personally involved in the investigation of Butler or the application for a warrant to search Butler's property. He did dispatch a Deputy Sheriff for the purpose of establishing a perimeter of the search area to observe and make note of those individuals who left or entered the premises during the search. However, there is no evidence to show that Sheriff Beckstead's actions were unlawful.
 
 
 48
 Because there is no genuine issue of fact that Sheriff Beckstead engaged in state action that infringed on Butler's constitutional rights, we affirm the grant of summary judgment on the § 1983 claim against him.
 
 III. Conspiracy
 
 49
 Butler brings also a claim under § 1985(3), contending that all named defendants conspired to retaliate against him and to deprive him of his federal and state rights. To state a claim for conspiracy under this section, "a plaintiff must show, inter alia, (1) that `some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' ... and (2) that the conspiracy aimed at interfering with rights' that are `protected against private, as well as official, encroachment.'" See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (citations omitted). The Supreme Court has not defined the parameters of a "class" beyond race, but "the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." Id. at 269, 113 S.Ct. 753; see also United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 836, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (questioning whether § 1985(3) was intended to reach beyond racially-based animus). The Fifth Circuit has recognized that the Supreme Court's concerns require lower courts to exercise restraint in extending § 1983(5) beyond racial prejudice. See McLean v. International Harvester Co., 817 F.2d 1214, 1219 (5th Cir.1987). In other words, § 1985(3) should "not be extended to every class which the artful pleader can contrive." McLellan v. Mississippi Power & Light Co., 545 F.2d 919, 928-29 (5th Cir.1977).
 
 
 50
 Butler has alleged no racial or otherwise class-based invidious discriminatory animus behind the defendants' conduct. For this reason, the district court's entry of summary judgment against Butler on this claim is affirmed.
 
 IV. Idaho Tort Claims Act
 
 51
 Finally, Butler appeals the district court's entry of summary judgment against his claims under the Idaho Tort Claims Act ("ITCA"). See Idaho Code §§ 6-901-929. The district court held that Butler's state law claims failed under the ITCA because Butler filed notice after he filed his complaint, which is the opposite order contemplated by the Act. See Idaho Code § 6-906 (requiring that a claim against a state governmental entity or its employees be filed within 180 days after the claim arises).
 
 
 52
 The district court provided a thoughtful analysis of the issue, citing three reasons why Butler's claims under the ITCA must fail. First, although the Idaho Supreme Court has not addressed the question of whether notice must be filed before the claim under the ITCA, the district court cited the "mandatory" nature of the ITCA in construing it strictly. As a second reason for its strict construction, the court noted that the ITCA represents a limited waiver of sovereign immunity from suit. Finally, the court noted that strict adherence to the notice requirement served the ITCA's purposes of: (1) saving litigation expenses by allowing amicable resolution of suits; (2) allowing authorities to conduct a full investigation into the circumstances of the claim to determine the extent of government liability; and (3) allowing the government to prepare its defenses. We hold that the district court's analysis of this issue was correct and affirm the entry of summary judgment against Butler's claims under the ITCA.
 
 V. Conclusion
 
 53
 We therefore affirm, with one exception. We reverse the district court's grant of summary judgment in favor of Idaho Motor Vehicles Investigator Elle on Butler's claims of illegal search and seizure under the United States and the Idaho Constitutions. The district court's grant of summary judgment in favor of Elle on Butler's due process claims, as well as in favor of the remaining defendants, is affirmed for the reasons articulated in this opinion. Reversed and remanded to the district court for further proceedings.
 
 
 54
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 At the time of the search, Elle also was commissioned as a Special Deputy for the Idaho Department of Law Enforcement and the Idaho Tax Commission. His specific function was to help regulate vehicle sales and use taxes, titling, and licensing
 
 
 [2]
 Rule 41(e) states that "a person aggrieved by a search and seizure may move the district court for the return of the property on the ground that the person is entitled to lawful possession of the property and that it was illegally seized." Idaho R.Crim. P. 41(e)
 
 
 [3]
 The complaint set forth seven claims. Count One claimed defendants violated Butler's Fourth Amendment rights by misrepresenting facts in obtaining the search warrant, participating in an illegal search, and exceeding the scope of the warrant. Count Two claimed defendants violated Butler's Fifth Amendment rights by criminally prosecuting him, failing to notify him of taxes due in contravention of Idaho law, and failing to return records and property seized during the search. Count Three claimed that all defendants engaged in a conspiracy to deprive Butler of his constitutional rights. Count Four alleged defendants violated Butler's state constitutional rights and the Idaho Tort Claims Act. The Fifth Count alleged that Mayor Jay Heusser and Sheriff Don Beckstead slandered Butler. Count Six sought declaratory judgment and the final count asked for an injunction prohibiting defendants from violating Butler's constitutional rights. We note that Butler's claims under the First, Fourth, and Fifth Amendments to the United States Constitution are made applicable to these defendants through the Fourteenth Amendment
 
 
 [4]
 Sheriff Don Beckstead is Officer Mark Beckstead's father
 
 
 [5]
 Hereafter, "Butler" refers to Butler and Butler Trailer collectively
 
 
 [6]
 Butler's claim in district court was comprehensive in that it alleged all three constitutional violations against each defendant and prayed for damages, as well as injunctive and declaratory relief. Butler's argument on appeal is more limited. We address only those claims that Butler raises in his briefs. Since he fails to argue for injunctive and declaratory relief before this court, we do not pass on those matters
 
 
 [7]
 Butler also brought a state law claim against McKenzie for malicious prosecutionSee Idaho Code § 19-3923. In a suit for malicious prosecution, the plaintiff must allege and prove that: (1) there was a prosecution; (2) the prosecution terminated in favor of the plaintiff; (3) the defendant was the prosecutor; (4) the prosecutor was actuated by malice; (5) there was not probable cause; and (6) the amount of damages that plaintiff has sustained. See Lowther v. Metzker, 69 Idaho 115, 203 P.2d 604, 606 (1949). However, Idaho law also provides that a government employee acting in the scope of his or her employment shall not be liable for any claim which arises out of malicious prosecution. See Idaho Code § 6-904. The Idaho Supreme Court had defined malice in the context of § 6-904 as "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended." Beco Constr. Co. v. City of Idaho Falls, 124 Idaho 859, 865 P.2d 950, 955 (1993) (citing Anderson v. City of Pocatello, 112 Idaho 176, 731 P.2d 171, 182-83 (1986)). We conclude as a matter of law that McKenzie's actions in this case fell within the scope of his employment and that the malicious prosecution claims against him are therefore barred by § 6-904. Even if this section did not operate to insulate McKenzie from Butler's malicious prosecution claims, the record is void of any facts to suggest that McKenzie acted with malice. Butler has therefore failed to make a prima facie case for malicious prosecution. For these reasons, summary judgment in McKenzie's favor is affirmed on this claim.
 
 
 [8]
 Butler brings his claims against defendants in both their personal and official capacities. Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awardedSee Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment to the United States Constitution bars suits in federal court for damages or injunctive relief against a state or an arm of the state. See Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir.1995). Butler's official-capacity suit against Elle, an investigator for the Idaho Department of Motor Vehicles, is therefore barred by Eleventh Amendment immunity. We need not decide whether the official capacity claims against McKenzie may be maintained as we conclude on the merits that McKenzie did not violate Butler's Fourth Amendment rights and that Butler's due process rights were not violated by the failure to follow Idaho's civil tax assessment procedures.
 
 
 [9]
 Local government officials may be liable in their official capacities under § 1983 where their "action pursuant to official municipal policy of some nature caused a constitutional tort."Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's `policy or custom' must have played a part in the violation of federal law." Graham, 473 U.S. at 166, 105 S.Ct. 3099 (citation omitted). The custom or policy of inaction, however, must be the result of a "conscious," City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), or "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Butler has made no showing that defendants acted according to customs or policies which amounted to a deliberate indifference of his constitutional rights. Because he has failed to make out a prima facie case, summary judgment on the official-capacity claims against the county and city defendants is affirmed.
 
 
 
 55
 LAY, Circuit Judge, concurring, and dissenting in part:
 
 
 56
 Perhaps my disagreement with the majority opinion on the issue of Elle's qualified immunity is based more on semantics than substance. If this be true, so be it; however, I sense a more major concern. We all are bound by the opinions of the United States Supreme Court. The majority opinion finds that the issue of qualified immunity is intertwined with the alleged constitutional violation because there exists a factual question of intent as to whether Elle in instigating the issuance of the search warrant was guilty of reckless disregard of the truth.[1] However, I respectfully disagree that motive touches the defense of qualified immunity.
 
 
 57
 The issue of qualified immunity is one that should be passed upon as a matter of law and decided at this time by this court without further remand. See Jeffers v. Gomez, 267 F.3d 895, 906-8 (9th Cir.2001).[2] I am in complete agreement that as a matter of law, no probable cause existed for the issuance of the search warrant instigated by Eric Elle. The majority and I agree that the underlying constitutional issue does involve Elle's state of mind. In this sense the question as to whether Elle acted in reckless disregard of the truth, which is the basis of Butler's complaint against Elle under the Fourth Amendment, remains as a fact issue for the jury to decide. However, where we part company is that this question is wholly separate from the issue now before this court: whether Elle's defense of qualified immunity should be sustained. The majority reasons motive is relevant to both the issue of qualified immunity and the alleged constitutional violation. The majority rules Elle's motive in securing the search warrant makes it impossible, at this time, for this court to pass on Elle's defense of qualified immunity. However, I cannot agree there exists a merger of the question of qualified immunity and plaintiff's constitutional claim. The Supreme Court has never recognized a merger of these two claims. The Supreme Court has never recognized that motive is a factual issue in reviewing the defense of qualified immunity. In fact, the Court has repeatedly rejected this argument:
 
 
 58
 The court's clear and convincing evidence requirement applies to the plaintiff's showing of improper intent (a pure issue of fact), not to the separate qualified immunity question whether the official's alleged conduct violated clearly established law, which is an "essentially legal question." Mitchell v. Forsyth, 472 U.S. 511, 526-529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); see Gomez, 446 U.S. at 640, 100 S.Ct. 1920 ("[T]his Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action") (emphasis added).
 
 
 59
 Crawford-El v. Britton, 523 U.S. 574, 589, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).
 
 
 60
 The majority overlooks the very purpose of the qualified immunity defense is not to determine liability vel non, but to make certain innocent government officials need not stand trial. The very purpose of the defense is to avoid the subjective examination of the government officials' state of mind that requires endless discovery and time consuming trial proceedings. If motive is a factual question in resolving the issue of qualified immunity, then the very purpose of the defense becomes a futile myth. The Supreme Court has made it clear that the question of qualified immunity is not one of fact and is not one that involves the state of mind of the state official, but is to be decided solely as a question of law. See Hunter v. Bryant, 502 U.S. 224, 227-28, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Thus, the sole question for this court in deciding qualified immunity in this case is whether (1) in light of clearly established law (2) a reasonable officer would have objectively believed his or her conduct lawful.
 
 
 61
 The majority opinion has adequately set forth the reasons why, in light of all known circumstances, a reasonable officer under similar circumstances would not have objectively believed his conduct was lawful. As the majority succinctly states, the record demonstrates Elle did not follow the civil procedures for assessing and collecting a sales tax deficiency. Further, Elle testified he used the only names by which he knew Butler and his company. However, this is disputed, as the majority points out, by the information Elle possessed at the time he submitted his affidavit. As far as Elle's argument that according to the records no taxes had been paid, the majority again points out "it was impossible for him to ascertain whether Butler had satisfied his ton-mile taxes in this manner." Elle failed to investigate the possibility that ton-mile taxes could be paid by trip permit. I approach this evidence in discussing qualified immunity, from the objective perspective of whether a reasonable officer under the circumstances existing would have been justified in seeking the search warrant that Elle did. Once this decision is made as the majority appears to conclude, qualified immunity is removed from the case. Therefore, the remand to the district court should be for the sole purpose of allowing the jury to determine whether Elle acted with sufficient intent to cause a constitutional deprivation to Butler.
 
 
 62
 As stated, qualified immunity is a question of law and the factual question of Elle's state of mind is completely irrelevant to that issue. Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court of the United States has emphasized, on various occasions, why the question of subjective intent is not an issue in the analysis of qualified immunity. See id. As the Harlow Court stated, subjective analysis defeats the purposes behind qualified immunity, since "[j]udicial inquiry into subjective motivation therefore may, entail broad-ranging discovery.... Inquiries of this kind can be peculiarly disruptive of effective government." Id.
 
 
 63
 More recently, the Court in Britton stated, "[under existing precedent] a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." Britton, 523 U.S. at 588, 118 S.Ct. 1584 (emphasis added).
 
 
 64
 I would hold, under the facts and circumstances involved here, that a reasonable officer would or should have known he was violating the constitutional right of the plaintiff. This resolution does not involve the officer's subjective state of mind. This is a question of law and the district court erred in granting summary judgment to Elle on the defense of qualified immunity. On remand, the district court should instruct the jury that if it finds under all the facts and circumstances that the defendant Elle knew or should have known he was acting in reckless disregard of the plaintiff's constitutional rights, the verdict on the merits of his claim should be decided in favor of the plaintiff. In other words, on remand, qualified immunity is a non-issue; the basis of the present appeal as a collateral order is because the district court erred in dismissing Butler's claim against Elle on the ground of qualified immunity. This court should now not only reverse this order, but affirmatively rule that Elle is not entitled to the defense of qualified immunity. For the reasons discussed by the majority the defense of qualified immunity asserted by Elle should now be adjudicated as a matter of law. The sole issue that persists relating to Elle's mental state is to be decided by the fact finder because it still remains an element of proof of the alleged constitutional violation.
 
 
 65
 With these qualifications, I am in full agreement with the majority opinion.
 
 
 
 Notes:
 
 
 [1]
 If this be so, then we should dismiss the appeal on Elle's qualified immunity since it is only an interlocutory order because of the remaining factual issue of intentJohnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).
 
 
 [2]
 The discussion inJeffers as to factual issues to be decided preliminary to ruling on the issue of qualified immunity does not include the question of motive. This issue arises in § 1983 cases where the parties are in dispute as to the factual events leading up to plaintiff's claim. See Johnson, 515 U.S. at 304, 115 S.Ct. 2151.