Mark J. HANSEN, Monica S. Hansen, Bernie L. Hansen, Kelly A. Hansen, Carl J. Bartaldo, Donald R. Lancaster, Constance A. Lancaster, Shasta General Engineering, Inc., a California Corporation, Plaintiffs,

v.

Arthur SCHUBERT, Joyce Baral, Bernie Renteria, R. Garcia, Greg A. Ziegler, Vincent Zambrana, Stephanie McCall, Shon Hill, Craig Burson, K.R. Ericson, Defendants.

No. CIV. S–02–0850 FCD GGH.

United States District Court, E.D. California.

Sept. 28, 2006.

Opinion Denying Reconsideration Nov. 20, 2006.

---

18. Plaintiff's counsel is admonished that the court will not look kindly upon the addition of frivolous claims.

Carleton Lee Briggs, Attorney and Counselor at Law, Santa Rosa, CA, Michael Steven Sorgen, Law Offices of Michael S. Sorgen, San Francisco, CA, for Plaintiffs.

Kevin William Reager, Office of the Attorney General, Stephen James Egan, California Attorney General, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

This matter is before the court on defendants' Arthur Schubert, Greg A. Ziegler, Vincent Zambrana, Stephanie McCall, and Craig Burson's ("defendants")[1] motion for summary judgment, or, in the alternative, summary adjudication pursuant to Federal Rule of Civil Procedure 56.[2] For the reasons set forth below,[3] defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND[4]

■ This case arises out of a search of plaintiffs' residence and business pursuant to a search warrant pertaining to allegations of tax evasion against plaintiffs. Plaintiffs assert various violations of their constitutional rights based upon the issuance and execution of the search warrant.

Defendant Schubert was a criminal investigator with the California Department of Employment Development ("EDD"). (SDF a 2, ¶ 1). On August 9, 2000, Schubert received a call from a confidential informant ("CI"), reporting what he believed to be an illegal tax evasion payroll scheme involving Shasta General Engineering, Inc. ("SGE"). (SDF at 2, ¶ 4). According to the informant, SGE was issuing two checks to each employee, one for wages and one for purported equipment rental. (SDF at 2, ¶ 5). Based upon his training and experience, Schubert believed that the scheme, if true, was suspicious and warranted further investigation. (SDF at 2, ¶ 6).

Schubert conducted background checks on the informant, including a criminal history and DMV records check. (SDF at 3, ¶ 7). He discovered that the informant was a local businessman with no prior criminal history and no investigations or charges pending. (SDF at 3, ¶ 7). He also suspected, and later confirmed, that the CI was a business competitor of SGE who was paying more for workers' com-

1. Plaintiffs voluntarily dismissed defendants Joyce Baral, Bernie Renteria, R. Garcia, Shon Hill, K.R. Ericson. *See* Docket Nos. 85, 87–88.

2. Any further references to a "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise indicated.

3. Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. *See* E.D. Cal. L.R. 78–230(h).

4. For the purposes of this motion, the court recounts plaintiffs' version of the facts, unless otherwise noted. (*See* Pls.' Separate Stmt. of Disp. & Undisp. Facts ("SDF"), filed Aug. 15, 2006).

Plaintiffs object to various pieces of evidence that defendants present in support of their motion. However, said evidence is immaterial to the court's analysis of the summary judgment motion.

Defendants object to plaintiffs' late filing of various declarations and an amended separate statement of disputed and undisputed facts. To the extent that such filings include evidence that was referred to, but inadvertently omitted from the original filings, the court considers such evidence. However, to the extent plaintiffs present new evidence in such filings, after this motion was submitted and without leave of court, the court does not consider such evidence.

pensation insurance than SGE because of SGE's payment allocations. (*See* Statement of Probable Cause in Supp. of Search Warrant ("Affidavit"), Ex. A to Decl. of Arthur Schubert in Supp. of Mot. for Summ. J. ("Schubert Decl."), filed July 31, 2006, at 4–5).

On April 20, 2001, at least six California Highway Patrol ("CHP") officers, several investigators from the Employment Development Department ("EDD"), employees of the Franchise tax board, and at least two deputy district attorneys entered and searched the Hansen residence, the premises of Shasta General Engineering, Inc. ("SGE"), and, later that morning, the Lancaster residence. (SDF at 9, ¶ 1). The search was executed pursuant to a search warrant pertaining to allegations of tax evasion against plaintiffs. (*See* SDF at 4, ¶¶ 11–13). The CHP officers approached with guns drawn. (SDF at 9, ¶ 2). Plaintiff Monica Hansen, who was the manager of SGE and ran the company from her residence, was the first to see the CHP officers. (SDF at 9, ¶ 3). The officers entered the main Hansen residence. (SDF at 9, ¶ 6). The officers then approached plaintiff Bernie Hansen's room and called out to him. (SDF at 10, ¶ 8). Bernie Hansen did not respond because he was asleep. (SDF at 10, ¶ 8). The officers kicked the door in, dragged him out of bed, and handcuffed him. (SDF at 10, ¶ 9). They pushed him up against his entertainment center and placed a shotgun against the back of his neck. (SDF at 10, ¶ 9). Bernie Hansen remained in handcuffs for at least an hour. (SDF at 11, ¶ 16).

Plaintiffs Kelly Hansen and Carl J. ("CJ") Bartaldo lived in an apartment in a detached section of the Hansen residence. (SDF at 10, ¶ 10). Kelly Hansen woke up to loud noises and banging on her apartment door. (SDF at 10, ¶ 10). As she came to the door, it was pushed in toward her, and she raised her hand to stop the door from hitting her. (SDF at 10, ¶ 10). Defendant Zambrana pulled her through the doorway, and ripped her top, leaving her breast exposed. (SDF at 10, ¶ 10). Despite repeated requests, Kelly Hansen was not allowed to change her top for several hours. (SDF at 11, ¶ 18–19).

Plaintiffs Monica Hansen, Kelly Hansen, Bernie Hansen, and CJ Bartaldo were eventually gathered together and ordered to sit at the dining room table. (Decl. Of Bernie Hansen ("B. Hansen Decl."), filed Aug. 15, 2006, ¶ 3). No one ever informed them that they were free to leave, with the exception of Monica Hansen, who was told after several hours that she was free to leave. (SDF at 11, ¶ 15). Plaintiffs were also prevented from taking telephone calls during the execution of the search warrant. (SDF at 11, ¶ 20).

In executing the search warrant, the officers searched through the Hansens' home, looking though mail, looking in the freezer, going though photo albums, going through drawers, looking under mattresses, and disturbing a crematory urn. (SDF at 11, ¶ 21). The officers removed sixty-three boxes of evidence from the Hansen residence. (SDF at 12, ¶ 28).

That same day, CHP and EDD officers also searched the Lancaster residence, where only plaintiff Constance Lancaster was home. (SDF at 11, ¶ 24). Constance Lancaster was asked to sit at the dining room table. (Pls.' Supplemental Responses to Defs.' Interrogatories, Ex. 14 to Decl. of Michael S. Sorgen ("Sorgen Decl."), filed Aug. 15, 2006, at 18). When she needed to use the restroom, she was escorted by the police officer. (*Id.* at 19). The officers searched various parts of her home, including her underwear drawer. (*Id.* at 19–21).

Plaintiffs assert claims for relief for violations of their federal civil rights under 42

U.S.C. § 1983.[5] Specifically, plaintiffs assert that (1) there was insufficient probable cause to support the issuance of a search warrant; (2) plaintiffs were unlawfully seized during the search; (3) the officers exceeded the scope of the search warrant; (4) the officers used excessive force in executing the warrant; and (5) defendants retaliated against them for filing this action.[6]

## STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' " *Id.* at 324, 106 S.Ct. 2548. Indeed, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

**5.** Plaintiffs assert that defendants' motion does not challenge their Supplement Complaint, filed March 8, 2005, or any of their state claims set forth in their Second Amended Complaint, filed September 16, 2002. The Supplemental Complaint added factual allegations and the § 1983 claim against defendants for retaliating against plaintiffs for filing this suit. Plaintiffs' state law claims set forth in the Second Amended Complaint were dismissed with prejudice by this court's Memorandum and Order, filed November 4, 2002. As such, the only remaining claims in this action are plaintiffs' § 1983 claims.

Defendants' motion does not address plaintiffs' claims for retaliation under § 1983. Therefore, the court does not address the merits of this claim.

**6.** In their opposition, plaintiffs also argue that the warrant "was so vastly overbroad that it violated plaintiffs' rights." (Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Opp'n"), filed Aug. 15, 2006, at 17). Plaintiffs neither asserted this claim in their Second Amended Complaint nor in their Supplemental Complaint. Further, plaintiffs did not seek leave to amend their complaint to add such a claim. As such, the court will not address the merits of this claim.

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Id.* at 251–52, 106 S.Ct. 2505.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602

F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd*, 810 F.2d 898 (9th Cir.1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356.

## ANALYSIS

### I. 42 U.S.C. § 1983

■ 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." Section 1983 confers no substantive rights itself, but rather, "provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

### A. Probable Cause Sufficient to Obtain a Search Warrant

Plaintiffs' bring a claim for relief under 42 U.S.C. § 1983 based upon their allegations that no probable cause existed for issuance of the search warrant. Specifically, plaintiffs assert that defendant Schubert (1) failed to establish the reliability of the confidential informant; (2) failed to bring forth information that corroborates the allegations of illegal activity by the confidential informant; and (3) failed to disclose material facts in his statement of probable cause in support of the search warrant.

The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits searches and arrests without probable cause. *Beck v. Ohio*, 379 U.S. 89, 90–91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *McKenzie v. Lamb*, 738 F.2d 1005, 1007–08 (9th Cir.1984). "The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime.'" *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). However, in reviewing the sufficiency of an affidavit in support of a search warrant, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant...." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotations and citations omitted). The Supreme Court has further explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.

*Id.* at 238–39, 103 S.Ct. 2317 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity ... innocent behavior frequently will provide the basis for a showing of probable cause." *Id.* at 245, 103 S.Ct. 2317; *see also Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir.2006) (reviewing a judge's finding of probable cause for the issuance of a search warrant for "clear error"); *United States v. Meek*, 366 F.3d 705, 712 (9th Cir.2004) (according "great deference" to the issuing judge's findings). In this context, probable cause exists if "the evidence, considered by the magistrate, viewed as a whole, would permit a reasonable person to believe that a search ... had a fair probability of revealing evidence." *Dawson*, 435 F.3d at 1062.

Plaintiffs contend that the affidavit supporting the search warrant did not establish the reliability of the confidential informant because (1) as a competitor of SGE, the informant may have had a financial motive for initiating an investigation of SGE; (2) the affidavit did not contain sufficient underlying circumstances upon which the informant based his beliefs; and (3) additional information in the affidavit did not corroborate the allegations of illegal activity. Defendants concede that assessing the reliability of hearsay information is one piece of evaluating whether "probable cause" exists for the issuance of a warrant. However, defendants correctly point out that there is no particular test for reliability. Rather, where "an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability"—the Supreme Court has found rigorous scrutiny of the basis of his knowledge unnecessary. *Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

"Even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Id.* at 234, 103 S.Ct. 2317. "It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Id.* at 244–45, 103 S.Ct. 2317 (internal quotations and citation omitted).

In this case, the citizen informant told defendant Schubert that he personally had been employed by SGE and plaintiffs from 1996 through 1999. (*See* Affidavit ¶ 26). The informant was a former supervisor at SGE. (Affidavit ¶ 14). The informant personally had received two pay checks each week from SGE which he explained were his wages divided in half. (Affidavit ¶ 14). He explained that the first check was for half his regular wages, and that the second check was for also for earnings, but "disguised as a reimbursement to the employee for the rental of non-existent tools and equipment." (Affidavit ¶ 14). The informant further stated that he had friends who still worked for SGE and believed that the company was still engaged in the same practice. (Affidavit ¶ 22).

Defendants point to other factors indicating the reliability of the information received. Schubert spoke to the informant on several different occasions, both in person and by telephone; this was not a one-time anonymous tip. (*See* Affidavit ¶¶ 13, 14, 22, 26). The information provided to defendant Schubert was personally observed and known to the informant. (*See* Affidavit ¶¶ 14, 22, 26). The informant provided valid identification (although he did not want his name disclosed because of

safety concerns). (Affidavit ¶ 14). Schubert conducted a CLETS criminal background check and a DMV records check on the informant and determined that he was a local business man with no prior criminal history and no investigations or charges pending. (Affidavit ¶ 14). The informant also reduced his allegations to writing and signed them under penalty of perjury thereby subjecting himself to criminal penalties if he was lying. (Affidavit ¶ 26).

In addition, defendant Schubert confirmed much of the information provided by the informant through independent sources. He conducted public records searches and verified the corporate status of SGE, the identities of the principals and the locations of its various business operations. (*See* Affidavit ¶ 13). Everything he found confirmed the information provided by the informant. The informant also provided the locations of current SGE field operations. (*See* Affidavit ¶ 14). Defendant Schubert went to those locations and personally observed that SGE crews were, in fact, at those sites. (*See* Affidavit ¶ 15). Schubert's observations not only confirmed that the informant was correct as to SGE's business operations, but also that his information was current.

At the locations of current SGE field operations, defendant Schubert personally observed that trucks and other equipment in the field bore "Shasta General Engineering" signs. (Affidavit ¶ 15). He observed that when crew members needed equipment, they went to the "Shasta General Engineering" trucks to obtain it. (Affidavit ¶ 15). Thus, it appeared to Schubert that the employees were using tools and equipment provided by SGE, not their own tools such that they would be entitled to a separate check from SGE for "equipment rental." (Affidavit ¶ 15).

Plaintiffs claim that the company name on the side of trucks provides no basis for

inferring the ownership of the vehicle or the equipment contained therein. However, a reasonable person could fairly infer such ownership. Likewise, from observing employees going to the SGE trucks to get tools and equipment, a reasonable person could fairly infer that the tools kept in the SGE trucks belonged to SGE. It was not necessary that Schubert be correct nor that his opinions and conclusions be accurate "more likely than not." *See Dawson,* 435 F.3d at 1062. A "fair probability" was all that was required. *Id.*

Likewise, Schubert did not merely rely on the informant or his own opinions regarding the legality of the payroll scheme. Schubert also consulted with Special Agent ("SA") Baral from the California Franchise Tax Board. (Affidavit ¶¶ 28–33). SA Baral was a sworn peace officer and tax auditor. (Affidavit ¶ 27; Schubert Decl. ¶ 11). She had substantial experience in investigating suspected tax fraud and tax evasion cases. (Affidavit ¶ 29). SA Baral provided copies of SGE's corporate tax returns and supporting documents that had been signed and submitted by plaintiff Monica Hansen. (Affidavit ¶ 30). SA Baral expressed her opinion to Schubert that if SGE was involved in the payroll scheme as suspected, then Mark and Monica Hansen, as well as their accountant Mitch Isner, would have been guilty of felony tax fraud and willfully aiding or assisting in the preparation of fraudulent returns. (Affidavit ¶ 31).

For these reasons, the "totality of the circumstances," which included information from the informant, evidence Schubert independently derived from his own investigation and the opinions he obtained from legal experts, there was a "substantial basis" for the judge's determination that "probable cause" existed to issue a search warrant so that the matter could be investigated further.

However, plaintiffs argue that defendant Schubert should have also included in his affidavit (1) a statement that the law allowed allocation of employee payment between wages and employee business expenses; (2) that he failed to speak Jennifer Stuhr, an auditor for the EDD; and (3) that he never actually spoke to SGE employees or ex-employees.[7] Plaintiffs assert that these omissions amount to judicial deception.

 "It is clearly established that judicial deception may not be employed to obtain a search warrant." *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To support a § 1983 claim for judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir.2002); *Hervey v. Estes,* 65 F.3d 784, 788–89 (9th Cir.1995) (stating that to survive summary judgment plaintiff "must make a substantial showing of deliberate falsehood or reckless disregard for the truth and establish that, but for the dishonesty, the challenged action would not have occurred") (quotations and citations omitted). The court determines the materiality of the alleged false statements or omissions. *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir.2002).

 The court finds that the alleged omissions in this case were not material to

---

7. To the extent that plaintiffs assert that Schubert (1) failed to disclose that the informant was believed to be a business competitor who had some motive to try to harm their business; (2) failed to disclose that the information provided by the informant was hearsay from friends who still worked at SGE; and (3) failed to disclose that he excluded 16 prior employees from his analysis of whether employees leaving SGE doubled their reportable wages, such facts were disclosed in the affidavit. (Affidavit ¶¶ 13, 22, 25).

the issuance of the search warrant. As to plaintiffs' first contention that Schubert omitted that an employer could legally allocate employee payment between wages and business expenses, the affidavit makes clear that it was not the legitimate implementation of such a payment scheme that was at issue. Rather, the affidavit of probable cause relates to probable cause of whether SGE's used such allocation where there were no business expenses in an effort to evade paying workers' compensation insurance premiums. The affidavit sets forth that the CI told Schubert that SGE was issuing two pay checks per week, one for half the earned wages and one for the rental of *non-existent* tools and equipment. (Affidavit ¶ 14). Therefore, a statement that the legitimate use of such payment allocation is legal is irrelevant to the circumstances set forth in the affidavit.

 Plaintiffs also contend that Schubert should have disclosed that he did not consult with Stuhr, the auditor for the EDD. However, defendant Schubert consulted with Special Agent Baral of the California Franchise Board, who advised him that if SGE paid employees for personal service, but disguised it as equipment rental, such actions would be in viola-

tion of the California Revenue and Tax Codes. (Affidavit ¶ 31). Plaintiffs assert that the omission of the failure to consult with Stuhr was material because Stuhr stated in her deposition that such a payment scheme is not illegal.[8] However, as set forth above, the legality of a legitimate payment allocation between payment for services and equipment rental was not at issue in the affidavit; rather, at issue was whether there was probable cause that SGE was evading taxes by paying employees for *non-existent* equipment rental. Defendant Schubert did not affirmatively misrepresent or imply in his affidavit that he did not consult with an auditor for the EDD. Further, he stated in his affidavit that he consulted with a Special Agent with the California Franchise Board, who rendered an opinion based in part upon SGE's corporation income tax returns for tax years 1997, 1998, and 1999. Therefore, any failure to disclose that Schubert did not speak to an EDD auditor was irrelevant to the issuance of the search warrant.[9]

 Finally, plaintiffs contend that defendant Schubert should have specifically disclosed in his affidavit that he did not actually speak to SGE employees or ex-

---

**8.** None of the deposition testimony included by plaintiffs includes such a statement. Further, Stuhr testified in her deposition that after a review of the records, she came to the conclusion that the Hansens underpaid their taxes. (Dep. of Jennifer Stuhr ("Stuhr Dep."), Ex. 7 to Sorgen Decl). However, as set forth, *infra,* even if Stuhr made this statement, it is irrelevant to the issuance of the search warrant.

**9.** Plaintiffs citation to the Ninth Circuit's decision in *Butler* is unavailing due to the factual differences between that case and the one at hand. In *Butler,* the investigator failed to inform the magistrate judge that he did not complete his search because he never searched the database for plaintiff's full name or the correct name of his company, both of which he had access to at the time he submit-

ted the affidavit. 281 F.3d at 1025. The investigator failed to inform the magistrate judge that the taxes may have actually been paid. *Id.* Further, the Ninth Circuit also noted in its analysis that the Idaho state appellate court had overruled the state court magistrate judge's finding of probable cause, which had necessarily influences the district court's analysis of the sufficiency of the warrant. *Id.* at 1026.

None of the factors in *Butler* are present in this case. There is no evidence that defendant Schubert failed to conduct an adequate investigation prior to submitting his affidavit of probable cause. Likewise, in this case, the judge's determination of probable cause has not been overturned. Therefore, plaintiffs' citation to *Butler* is not persuasive.

employees, other than the confidential informant. In his affidavit, defendant Schubert set forth a detailed account of his investigation. He also set forth a detailed account of his conversations with the confidential informant, who was a former employee of SGE. A review of the affidavit and the investigation by Schubert as described therein makes clear that Schubert did not speak to SGE employees or ex-employees, other than the CI. The failure to explicitly state that Schubert did not do so does not render the affidavit in any way misleading. Therefore, this omission was immaterial to the issuance of the search warrant.

Because under the totality of the circumstances there was a substantial basis for the judge's determination that probable cause existed to issue a search warrant, and because any omissions in the affidavit were immaterial to the issuance of the search warrant, defendants'[10] motion for summary judgment regarding plaintiffs' claim that no probable cause existed for issuance of the search warrant is GRANTED.

## B. Unlawful Seizure During the Search

Plaintiffs claim that their Fourth Amendment rights were violated when they were unlawfully seized during the execution of the search warrant. Specifically, plaintiffs assert that (1) the officers displayed their weapons and touched plaintiffs in order to move them to the living room; (2) Monica Hansen, Kelly Hansen, and Bernie Hansen were all forced to remain at the living room table for several hours and they were not told that they were free to leave; (3) Connie Lancaster was told that she had to remain in the living room; (4) Connie Lancaster was escorted to the bathroom; and (5) Monica Hansen was not allowed to answer the telephone during the entire period of the search.[11]

A person has been "seized" with the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). However, it has long been established that police officers executing a search warrant may detain the occupants of the building or place to be searched. *See Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) ("[F]or Fourth Amendment purposes, we hold that a war-

---

10. There is no dispute that defendant Schubert was the only defendant who was personally involved in the preliminary investigation up to the point when the warrant was actually obtained. Therefore, none of the other defendants can be held liable for acts occurring prior to the issuance of the warrant.

11. Plaintiff Monica Hansen also asserts for the first time in plaintiffs' opposition that she twice asked for an attorney and was told that she did not have a right to an attorney nor did she need an attorney. The "right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *U.S. v. Hayes,* 231 F.3d 663, 670 (9th Cir.2000). To the extent that plain-

tiff is attempting to assert a claim based upon the failure to be afforded counsel after the request for one during a custodial interrogation, such a claim would be cognizable under the Fifth Amendment. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, no such claim was alleged in any of plaintiffs' filed amended or supplemental complaints.

Plaintiffs also contend that Kelly Hansen was forbidden from changing her ripped shirt for two hours and that Bernie Hansen was forced to remain in handcuffs for at least an hour. The court will address these assertions below in its discussion of plaintiffs' claims for excessive force.

rant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."); *Dawson*, 435 F.3d at 1065 (applying the doctrine of *Summers* "to all searches upon probable cause, not just searches for contraband"); *Ganwich v. Knapp*, 319 F.3d 1115, 1120 (9th Cir. 2003) (upholding detention of business's employees in search of business). The United States Supreme Court has held that "[a]n officer's authority to detain incident to a search is *categorical*"; it does not depend on the "quantum of proof justifying detention of the extent of the intrusion to be imposed by the seizure." *Muehler v. Mena*, 544 U.S. 93, 98, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (emphasis added). The Ninth Circuit has interpreted the Supreme Court's language "to mean that the duration of a detention may be coextensive with the period of a search, and require no further justification." *Dawson*, 435 F.3d at 1066. The Ninth Circuit has recognized that detention of a building's occupants during a search furthers at least three law enforcement interests: (1) "detention prevents a suspect from fleeing before the police discover contraband;" (2) "detention minimizes the risk that an officer or an occupant might be harmed during the search;" and (3) "detention often expedites a search." *Id.* (citations omitted). However, the police do not have "unfettered authority to detain a building's occupants in any way they see fit;" the officer must conduct the detention in a reasonable manner. *Id.* (citing *Muehler*, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299).

▮▮▮▮ Accepting plaintiffs' assertion that they were not told they were free to leave as true, the officers executing the warrant had the categorical right to detain plaintiffs for the entire duration of the search. In this case, defendants present undisputed evidence that the officers executing the warrant had information that the Hansens had multiple registered weapons,[12] that Mark Hansen had previously resisted arrest, and that there were dogs kept on the premises. (ROSS at 9, ¶ 1).[13] As such, the law enforcement interests in safely and effectively conducting the search of the Hansen premises for evidence of tax evasion justified the detention of plaintiffs during the search. *See Dawson*, 435 F.3d at 1066 (finding that detention of building tenants was reasonable where, inter alia, the owner of the boardinghouses was associated with a man who had a violent criminal history). For these same reasons, it was reasonable for the police to enter the premises aggressively and drawing their sidearms, as was indicated by plaintiffs' testimony, would not render the detention unreasonable. *See id.* at 1068 (holding that entering aggressively and drawing sidearms did not render the detention unreasonable where the police had reason to believe that an associate of the building owner might violently resist the inspection team or their police escorts). Further, it was not unreasonable for the officers to keep plaintiffs at the dining room table or the living room couch for the duration of the search in order to facilitate the inspection and its completion. *See id.* These precautions prevented any of the plaintiffs from fleeing in the event that incriminating evidence was found and

---

**12.** The officers discovered an unregistered automatic assault rifle in Kelly Hansen's room as a result of the search. (Defs.' Reply to SDF ("RUF"), filed Aug. 25, 2006, at 10, ¶ 6). The officers also located several other weapons during their search of the home. (RUF at 10, ¶ 7).

**13.** Plaintiffs deny this statement, but cite to no evidence supporting their denial.

minimized the risk of harm to officers by ensuring that none of the employees were able to obtain a weapon. *See Ganwich,* 319 F.3d at 1120.

Plaintiff Constance Lancaster claims that she was unreasonably seized because she had to remain in the living room and because she was escorted when she had to use the bathroom. As set forth above, these precautions were not unreasonable because they served the important law enforcement interests of preventing plaintiff from fleeing in the event that incriminating evidence was found, preventing plaintiff from destroying evidence, and preventing plaintiff from obtaining a weapon. Further, defendants present evidence that the officers brought plaintiff both water and coffee, and that she perceived them to be concerned about her because they kept asking her if she was okay. (Dep. of Constance Lancaster ("Lancaster Dep."), Ex. B to Decl. of Stephen J. Egan in Supp. of Mot. for Summ. J., filed July 31, 2006, 48:23–49:8).

Plaintiff Monica Hansen, citing the Ninth Circuit's decision in *Ganwich,* also contends that her rights were violated because she was not allowed to use the telephone during the search. 319 F.3d 1115. In *Ganwich,* the Ninth Circuit restated the rule that "officers may prevent temporary detainees from using a telephone only so long as that restriction is 'carefully tailored to its underlying justification.'" *Id.* at 1123 (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). The court determined that it was unreasonable for officers searching a business to tell employees that they could not use a phone more than an hour after the premises had been secured. *Id.* In that case, there was no threat that the employees would use the phone to warn others or to destroy evidence. *Id.* The officers had already released some of the employees, and therefore, if others

were going to be warned, the inability to use the telephone was not going to prevent such communication. *Id.* Finally, the court noted that the interest in preventing plaintiffs from making a phone call was outweighed by plaintiffs' stronger interests in contacting relatives because certain plaintiffs needed to arrange for the care of their children or to explain their apparent disappearance. *Id.*

The facts of this case present circumstances that were not present in *Ganwich.* Mark Hansen was one of the primary persons under investigation. He was not at the home and his whereabouts were unknown. Officers were concerned that the Hansen family members would try to contact him so that he could flee, destroy evidence and/or attempt to harm the officers. Officers were already aware that Mark Hansen was known to have weapons and had previously resisted arrest. Further, the confidential informant had provided information that Mark Hansen was a "hot head" who had been in several physical fights with employees and others. (Schubert Decl. ¶ 35). Therefore, it was reasonable for the officers to prevent the Hansens from using the phone during the duration of the search. Further, in this case, plaintiffs have presented no countervailing interests such as the need to arrange for childcare or to explain an absence to a relative, as was persuasive in *Ganwich.*

For the reasons set forth above, plaintiffs have failed to demonstrate any triable issues of material fact in support of their claims that they were subjected to an unlawful seizure during the search. Therefore, defendants' motion for summary judgment regarding plaintiffs' claim that they were unlawfully seized is GRANTED.

## C. Scope of the Search Warrant

Plaintiffs argue that there are triable issues of fact regarding whether the

search violated their Fourth Amendment rights because it exceeded the scope of the warrant. Specifically, plaintiffs contend that officers unreasonably searched in several locations which could not plausibly hold evidence related to the crime of tax evasion, such as a crematory urn, a medicine cabinet, the freezer, under mattresses, in drawers, the mail, and photo albums.[14]

■ It is well-established that the Fourth Amendment prevents "general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Mann*, 389 F.3d 869, 877 (9th Cir.2004). However, the search warrant need only be reasonably specific, rather than elaborately detailed. *Id.* (quoting *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir.1996)). In this case, the search warrant authorized the seizure of business documents, including paper documents and electronic storage devices, such as magnetic tapes or CDs. These types of items are small, portable, and very easy to hide in drawers, boxes, containers such as an urn, medicine cabinets, or in the freezer. Therefore, it was reasonable for the officers to infer that the evidence they were authorized to seize could be found in any of the places defendants searched.[15] *See United States v. Williams*, 687 F.2d 290, 293 (9th Cir.1982) (upholding the search of a lunch box because it was reasonable to infer that evidence of marijuana cultivation, including documents, would be found in the lunch box).

Plaintiffs contend that the officers were searching for drugs, not documents, because when Mark Hansen asked the court clerk for a copy of the *Hansen v. EDD* warrant, he was given a search warrant relating to a search for methamphetamine with a similar number. Plaintiffs also assert that defendant Schubert said that he expected officers to find large amounts of drugs and cash at the residence during the search. However, it is irrelevant to this action whether the court clerk gave Mark Hansen a copy of the wrong search warrant. Further, assuming that defendant Schubert made such a statement, it is also irrelevant whether defendant Schubert expected to find drugs or cash. Defendants were reasonable in performing their search for evidence of tax evasion. As such, defendants' motion for summary judgment regarding plaintiffs' claim that the search exceeded the scope of the search warrant is GRANTED.

**D. Excessive Force in Execution of the Search Warrant**

■ Plaintiffs Kelly Hansen and Bernie Hansen argue that defendants vio-

---

14. Plaintiffs alleged in their Complaint that defendants exceeded the scope of the search warrant by searching Kelly Hansen's C.J. Bartaldo's cars, which were not authorized by the search warrant. Although raised by defendants in their motion for summary judgment, plaintiffs do not address this claim in their opposition. The court interprets this silence as non-opposition to defendants' motion on these grounds. Furthermore, both Hansen and Bartaldo signed consent forms to search the cars, although they assert that they were coerced into doing so with the threat of seizure. (SDF at 5, ¶¶ 4–5). However, neither plaintiff can identify which defendant, if any, searched their vehicles. As such, defen-

dants' motion regarding this claim is GRANTED.

Plaintiffs also assert that the officers performed an oral cavity search on Bernie Hansen. The court will address this assertion in its discussion of plaintiffs' excessive force claims.

15. To the extent that plaintiffs assert that officers took ashes from the crematory urn, such seizure would likely exceed the scope of the warrant. However, plaintiffs do not identify any defendant as the individual who took the ashes, nor do they assert which agency the individual worked for.

lated their constitutional rights by using excessive force against them during the execution of the search warrant. Whether law enforcement officials used excessive force in the course of making an arrest is properly analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

> Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.

*Id.* at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). The reasonableness of a particular use of force must be evaluated from the perspective of a reasonable officer on the scene. *Id.* A proper application of the reasonableness inquiry

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Robinson v. Solano County*, 278 F.3d 1007, 1013–14 (9th Cir.2002) (internal quotations omitted); *see also McKenzie v. Lamb*, 738 F.2d 1005, 1011 (9th Cir.1984) (the determination requires the analysis of factors such as "the requirements for the officers' safety, the motivation for the arrest, and the extent of the injury inflicted").

Defendants argue that the level of force used by officers while executing the warrant was reasonable under the circumstances. Defendants also argue that even if the force was in some way exces-

sive, the officers are protected from liability under the doctrine of qualified immunity. The doctrine of qualified immunity protects from suit government officers who do not knowingly violate the law. *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir.1994). Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (citation omitted). A law officer can establish qualified immunity by demonstrating (1) that the law governing the officer's conduct was not clearly established at the time of the challenged actions, or (2) that under the clearly established law, an officer could reasonably have believed that the alleged conduct was lawful. *See Katz v. United States*, 194 F.3d 962, 967 (9th Cir.1999); *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir.1994); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (observing that police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

The question of immunity generally is not one for the jury. Qualified immunity " 'is an immunity from suit rather than a mere defense to liability'.... [Therefore,] [i]mmunity ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citation omitted). However, if a genuine issue of material fact exists regarding the circumstances under which the officer acted, then the court should make the determination after the facts have been developed at trial. *Act Up! Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993).

The initial inquiry that the court must make to determine whether an official is entitled to qualified immunity is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). The next inquiry is whether the constitutional right was clearly established. *Id.* This inquiry must be taken in the light of the specific context of the case. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* However, this does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but, rather, in light of pre-existing law, the unlawfulness must be apparent. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal citations omitted). The salient question is whether the law at the time of the disputed conduct gave defendants "fair warning that their alleged treatment of plaintiffs was unconstitutional." *See id.* at 741, 122 S.Ct. 2508. There must exist a clearly established rule so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 205–06, 121 S.Ct. 2151.

**1. Kelly Hansen**

Plaintiff Kelly Hansen asserts that she was sleeping in her room, in a detached section of the Hansen residence where she lived with her fiancé CJ Bartaldo, when she heard loud noises, including someone banging on her door. (RUF ¶ 10). She went to the front door and tried to open it, but it was slammed forward toward her. (Dep. of Kelly Hansen ("K. Hansen Dep."), Ex. 10 to Sorgen Decl., 49:3–5). Plaintiff threw up her hands because she thought it was going to hit her face. (*Id.* at 50:13–15). She asserts that defendant Zambrana grabbed her by the front of her tank top and jerked her through the door opening. (*Id.* at 50:20–51–5). In doing so, defendant Zambrana's hand grabbed her breast at the same time and ripped plaintiff's tank top. (*Id.* at 51:5–11). Plaintiff's left breast was exposed. (*Id.* at 51:12–15). Plaintiff was pushed up against the wall with several guns pointed at her for two minutes. (*Id.* at 53:22–54:3). Plaintiff did not realize that defendants were police officers for approximately fifteen minutes when she noticed that there were black and white cars on the property. (*Id.* at 54:21–55:3). Plaintiff asked Sergeant Ericson if she could change her shirt because her breast remained exposed. (*Id.* at 85:3–9). Plaintiff also asked defendant Zambrana, defendant McCall, and defendant Schubert if she could change her shirt in order to cover herself. (*Id.* at 85:17–22; 86:18–20; 124:11–20). Plaintiff was not allowed to change her shirt for several hours, after she had answered defendant Schubert's questions. (*Id.* at 123:24–124:20).

As set forth above, plaintiff Kelly Hansen has presented evidence that she was attempting to open the doors to the officers and comply with the search when she was grabbed from her apartment, her top was ripped such that her breast was exposed, and guns were pointed at her. Then, for several hours, including the time period when she was questioned by defendant Schubert, plaintiff was not allowed to change her shirt in order to cover herself. As such, there are triable issues of fact regarding whether defendants used excessive force against plaintiff Kelly Hansen and whether her detention for several

hours with her breast exposed was unreasonable.

Defendants contend that they are entitled to qualified immunity. However, assuming that plaintiff's version of the facts is true, at the time of the search, the law was sufficiently clearly established to place a reasonable law officer on notice that using this type of force against an individual who was complying with a search and the failure to allow her to cover her exposed breast for several hours while she was detained is unlawful. *See McKenzie v. Lamb,* 738 F.2d 1005, 1010 (9th Cir.1984) (holding that the use of weapons, restraining individuals by force, handcuffing, throwing individuals against the ground, and failing to identify as law enforcement is a violation of the Fourth Amendment where the arrested individuals did not resist arrest); *Summers,* 452 U.S. at 701–02, 101 S.Ct. 2587 (holding that in order for the conditions of detention during the execution of a search warrant to be reasonable, the governmental interest must outweigh the intrusion); *Franklin v. Foxworth,* 31 F.3d 873, 876 (9th Cir.1994) ("A detention conducted in connection with a search may be unreasonable if it is unnecessarily . . . degrading."). Thus, defendants had "fair warning that their alleged treatment of plaintiff was unconstitutional." *Hope,* 536 U.S. at 741, 122 S.Ct. 2508. Because there are triable issues of fact as to whether the force used against plaintiff Kelly Hansen and the conditions of her subsequent detention were unreasonable, and because defendants had notice that their alleged conduct was unconstitutional, the court cannot find that defendants are entitled to qualified immunity at this stage of the litigation.

Therefore, because plaintiff Kelly Hansen has presented evidence demonstrating a triable issue of material fact regarding the reasonableness of the seizure, defendants Zambrana, McCall, and Schubert's motion for summary judgment in regards to this claim is DENIED. However, because plaintiff Kelly Hansen presents no evidence regarding defendant Ziegler's or defendant Burson's action relating to this claim, defendant Ziegler's and defendant Burson's motion for summary judgment regarding this claim is GRANTED.

### 2. Bernie Hansen

Plaintiff Bernie Hansen asserts that he was awakened by his locked bedroom door being kicked off the hinges. (Dep. of Bernie Hansen ("B. Hansen Dep."), Ex. 10 to Sorgen Decl., 48:17–22). Defendants Ziegler, Burson, and another officer entered the room, carrying assault weapons and wearing a bullet proof vest. (*Id.* at 51:2–22). Plaintiff was still laying down in bed, under the covers, and the defendant Ziegler dragged him out of bed by the right arm. (*Id.* 53:4–24). Defendant Ziegler then dragged him to the entertainment center and pinned him up against it while he and the other officers were holding him. (*Id.* at 54:1–3). Plaintiff's chin was pushed into the wood and a single barrel shotgun was pushed up against his head. (*Id.* at 55:10–21). Defendant Ziegler handcuffed his hands in the back. (*Id.* at 58:1–5). Plaintiff contends that he did not say anything during this period of time. (*Id.* at 58:8–10). Plaintiff also contends that he did not swallow anything. (*Id.* at 58:15–16). Nevertheless, defendant Ziegler searched his mouth. (*Id.* at 65:3–4). Further, defendant McCall told Ziegler to search plaintiff's mouth again. (*Id.* at 65:10–19). Plaintiff was forced to remain in handcuffs for at least an hour. (*Id.* at 73:18–23).

As set forth above, plaintiff Bernie Hansen has presented evidence that he was sleeping when defendants kicked in his door, dragged him out of bed, pinned him

up against the entertainment center with a shot gun, handcuffed him, and performed an oral search. Plaintiff was then kept in handcuffs for over an hour. Plaintiff's evidence also demonstrates that Bernie Hansen was not resisting the officers, was not speaking to the officers, and had not swallowed anything. As such, there are triable issues of fact regarding whether defendants used excessive force against plaintiff Bernie Hansen and whether his detention for at least an hour in handcuffs was unreasonable.

■ Defendants contend that they are entitled to qualified immunity because the law applicable to these circumstances was not clearly established at the time of the search. In regards to the use of handcuffs during the detention, defendants are correct. At the time of the search, it was not clearly established in the Ninth Circuit, that handcuffing a person and detaining him in handcuffs during a search for evidence would violate his Fourth Amendment rights. *See Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir.2003). It was not until 2003 that the Ninth Circuit clarified that this conduct, absent justifiable circumstances, constituted a Fourth Amendment violation. *Id.* However, assuming that plaintiff's version of the facts is true, at the time of the search, the law was sufficiently clearly established to place a reasonable law officer on notice that using this type of force against an individual who was complying with a search is unlawful. *See McKenzie v. Lamb*, 738 F.2d 1005, 1010 (9th Cir.1984) (holding that the use of weapons, restraining individuals by force, handcuffing, throwing individuals against the ground, and failing to identify as law enforcement is a violation of the

Fourth Amendment where the arrested individuals did not resist arrest). Therefore, defendants had "fair warning that their alleged treatment of plaintiff was unconstitutional." *Hope*, 536 U.S. at 741, 122 S.Ct. 2508. Because there are triable issues of fact as to whether the force used against plaintiff Bernie Hansen was unreasonable, and because defendants had notice that their alleged conduct was unconstitutional, the court cannot find that defendants are entitled to qualified immunity at this stage of the litigation in regards to the force used in defendants' execution of the search warrant.

Therefore, because plaintiff Bernie Hansen has presented evidence demonstrating a triable issue of material fact regarding the reasonableness of the force used, defendants Zeigler, Burson, and McCall's motion for summary judgment in regards to this claim is DENIED. However, because plaintiff Bernie Hansen presents no evidence regarding defendant Zambrana's or defendant Schubert's action relating to this claim, defendant Zambrana's and defendant Schubert's motion for summary judgment regarding this claim is GRANTED.

## II. Damages

Plaintiffs assert that they have suffered damages for lost income and future profits arising from violations of the Fourth Amendment. Specifically, plaintiffs assert that they suffered losses to their business and to their business reputations as a result of the search and seizure. However, as set forth above, only plaintiffs Bernie Hansen and Kelly Hansen have presented triable issues of fact regarding claims for violations of the Fourth Amendment.[16]

---

16. Plaintiffs' basis for claiming damages for SGE's business losses is that the warrant was so vastly overbroad that it violated plaintiffs' rights. Plaintiffs did not allege a claim on this basis in any of their filed complaints, and therefore, the court will not consider this argument.

There is no connection between the claims for excessive force and the claimed damages for lost income and future profits. Therefore, defendants' motion for summary judgment regarding plaintiffs' claim for lost income and future profits is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED in part and DENIED in part. Plaintiffs Bernie Hansen and Kelly Hansen have demonstrated triable issues of fact in regards to their claims for excessive force and unreasonable search and seizure in violation of their Fourth Amendment rights against defendants. However, plaintiffs have failed to raise triable issues of material fact in order to withstand summary judgment with respect to all other asserted claims.

IT IS SO ORDERED.

## *MEMORANDUM AND ORDER*

This matter is before the court on plaintiffs' motion for reconsideration of this court's September 28, 2006 Memorandum and Order ("Order") pursuant to Eastern District Local Rule 78–230(k)[1] and Rule 54(b)[2] of the Federal Rules of Civil Procedure, or, in the alternative, certification of an immediate interlocutory appeal under 28 U.S.C. 1292(b). Plaintiffs also seek leave to file a third amended complaint. Because the court has previously entered a scheduling order providing that "[n]o further amendments to pleadings without leave of court, good cause having been shown," (Docket No. 7, filed Aug. 5, 2002), plaintiffs are also implicitly seeking a modification of the Pretrial Scheduling Order pursuant to Rule 16 of the Federal Rules of Civil Procedure. Defendants oppose these motions. For the reasons set forth below,[3] plaintiffs' motions are DENIED.[4]

### A. Reconsideration

The court's Order granted in part and denied in part defendants' motion for summary judgment. Plaintiffs argue that this court should reconsider its Order as it relates to two issues for which defendants' motion for summary judgment was granted. First, plaintiffs argue that the court did not conduct the proper proportionality analysis regarding the manner of the execution of the warrant. Second, plaintiffs argue that the court erred in finding that defendant Schubert's affidavit established probable cause for the search at issue in this case.

An order that resolves fewer than all of the claims among all of the parties "is subject to revision at any time motion as the court's order adjudicated "fewer than all the claims ... of fewer than all the parties." Fed. R. Civ. Proc. 54(b). Nonetheless, despite the procedural defect, the court will interpret plaintiffs' motion as a motion for reconsideration under Rule 54(b).

1. Eastern District L.R. 78–230(k) provides the procedural rule for filing a motion for reconsideration of "any motion ... granted or denied in whole or in part."

2. Plaintiffs inappropriately filed this motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. However, Rule 60(b) provides the procedural rule for filing a motion for relief from *final judgment,* and is therefore, not applicable. *See Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 466–67 (9th Cir.1989). The court's Order granted in part and denied in part defendants' motion for summary judgment. As such, Rule 54(b) provides the appropriate procedural rule for this

3. Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78–230(h).

4. The facts of this case are set forth in the court's Memorandum and Order, filed September 28, 2006. (Docket # 102).

before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b); 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478 (2d Ed.2005) (while authorized, reconsideration of interlocutory orders disfavored). Where reconsideration of a nonfinal order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." *United States v. Martin*, 226 F.3d 1042, 1048–49. (9th Cir.2000), *cert denied*, 532 U.S. 1002, 121 S.Ct. 1671, 149 L.Ed.2d 650 (2001). To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g., Kern–Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir.1987), cert. denied, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

■ Generally, and absent highly unusual circumstances, reconsideration is appropriate only where (1) the party presents the court with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, (3) there is an intervening change in controlling law.[5] *See Sch. Dist. No. 1J, Multnomah County, Oregon v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Turning to plaintiffs' first issue, plaintiffs argue that "the court did not address the issue of the reasonableness of the manner of execution of the warrant directly, as it was required to do." (Pls.' Mot. for Recons. ("Pls.' Mot."), filed Oct. 27, 2006, at 4). The court addressed this issue. (*See* Order at 18–24). Plaintiffs argue that the order "did not consider the level of intrusiveness of the search." (Pls.' Mot. at 5). The court also addressed this issue. (*See* Order at 24–26).

■ Plaintiffs assert, with great vehemence and a degree of disdain, that they disagree with the court's findings. This is not grounds for the grant of reconsideration. Plaintiffs advanced arguments in their motion for reconsideration identical to the arguments they advanced in their opposition to defendants' motion for summary judgment. The court found these arguments unpersuasive then and unpersuasive now. In sum, plaintiffs simply offer no new evidence or legal support for their contention that the court committed clear error.[6]

---

**5.** While the standards applicable to motions for reconsideration of final judgments or orders under Rules 59(e) (final judgments) and 60(b) (final judgments and orders) technically do not delimit the court's inherent discretion to reconsider interlocutory orders, the court nonetheless finds them to be helpful guides to the exercise its discretion.

**6.** Plaintiffs assert that the court improperly held that they did not have a claim for the alleged unlawful seizure of ashes. (Pls.' Mot. at 4 n. 1). Plaintiffs rely on the court's decision in *Rutherford v. Berkeley*, 780 F.2d 1444, 1448 (9th Cir.1986), asserting that this claim must proceed to trial even if plaintiffs cannot identify the specific officers involved. In *Rutherford*, the plaintiff testified that the defendant police officers were among the five or

six officers who were surrounding him while he was beaten and that he saw each of their faces while he was beaten. *Id.* However, the plaintiff could not specifically state whether the defendants punched or kicked him. *Id.* The Ninth Circuit found that a jury could reasonably infer that the named officers were participants in the plaintiff's beating and that summary judgment was inappropriate. *Id.*

In this case, plaintiff Kelly Bartaldo testified at her deposition that she saw that ashes from the urn were being put in a plastic bag by a man with hair who was taller than she was and who wore a vest. (Dep. of Kelly Bartaldo at 132:4–133:9). She did not identify who was in the room or whether any of the named defendants were present. As such, this case is readily distinguishable from the facts of *Rutherford*. Further, *Kelly Bartaldo*

Plaintiffs' motion for reconsideration regarding their contention that the court did not adequately address the manner of the execution of the warrant is DENIED.

Turning to plaintiffs' second issue, plaintiffs argue that the court erred in finding that defendant Schubert's affidavit established probable cause to issue a search warrant.[7] (Pls.' Mot. at 6). Specifically, plaintiffs assert that (1) the affidavit does not establish the reliability of the informant; (2) the affidavit does not contain adequate underlying circumstances on which the CI based his beliefs; and (3) additional information did not corroborate the allegations of the CI. Plaintiffs' counsel concludes that the court's analysis of certain issues was *"wrong-headed on every possible level."* (Pls.' Mot. at 12). While the court is appreciative of counsel's personal assessment, as with the first issue, plaintiffs' counsel utterly fails to support the motion for reconsideration with new evidence or argument. Rather, counsel merely complains that the court did not get it right. Such petulance has no place in a serious discussion of the 4th Amendment, nor is it a substitute for an understanding of the Federal Rules of Civil Procedure.

Plaintiffs' motion for reconsideration regarding their contention that the court erred in finding that defendant Schubert's affidavit established probable cause is DENIED.

---

*did not testify nor was there any evidence that any defendant actually seized the ashes.*

**7.** In a footnote, plaintiffs also assert that they "are entitled to have a jury decide whether defendant Schubert should be held responsible for constitutional violations at the Hansen and Lancaster homes" because he misled officers through "his false and baseless comments." (Pls.' Mot. at 4 n. 2). Plaintiff's rely on the Ninth Circuit's decision in *Baldwin v. Placer County,* 418 F.3d 966 (9th Cir.2005).

---

**B. Interlocutory Appeal Under 28 U.S.C. § 1292(b)**

In the alternative, plaintiffs request that the court certify these two issues for immediate interlocutory appeal. The general rule is that an appellate court should not review a district court ruling until after entry of a final judgment. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 474, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1026 (9th Cir.1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.,* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); *see* 28 U.S.C. § 1291. There is however, an exception to this general rule:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon ... permit an appeal ... if application is made to it within ten days ....

28 U.S.C. § 1292(b). An interlocutory appeal should be granted "only in exceptional situations in which allowing [such an appeal] would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.,* 673 F.2d at 1026 (citing *U.S. Rubber Co. v.*

---

In *Baldwin,* plaintiffs presented evidence, in the form of thirteen declarations from other individuals whose trash was searched, that the defendant officer's affidavit supporting probable cause contained lies. In this case, plaintiffs did not present evidence sufficient to create a triable issue of fact that Schubert made false and baseless comments in his affidavit or to the officers executing the warrant. As such, *Baldwin* is inapplicable.

*Wright,* 359 F.2d 784, 785 (9th Cir.1966)). The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances. *Coopers & Lybrand,* 437 U.S. at 474–75.

Section 1292 identifies three factors that must be present·in order for the court to· certify an appeal. First, the issue to be certified must involve a controlling issue of làw. An issue is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.,* 673 F.2d at 1026 (citing *U.S. Rubber Co. v. Wright,* 359 F.2d at 785). Second, there must be substantial ground for difference of opinion on that issue. A party's strong ·disagreement with the court's ruling is not sufficient for there to be a "substantial ground for difference"; the proponent of an appeal must make some greater showing. *See First Am. Corp. v. Al–Nahyan,* 948 F.Supp. 1107, 1116 (D.D.C.1996) ("Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal."). Third, an interlocutory appeal must be likely to materially speed the termination of the litigation. This factor is linked to whether an issue of law is "controlling" in that the court should consider the effect of a reversal by the court of appeals on the management of the case. *See In re Cement Antitrust Litig.,* 673 F.2d at 1026.

As apparently is their wont, plaintiffs again fail to address the substantive requirements for granting their request, except for conclusory assertions.' (Pls.' Mot. at 2). However, assuming that the first factor is met, plaintiffs have not shown that there is a "substantial ground for difference of opinion." Rather, the only ground that plaintiffs' counsel implicitly rely upon is his own opinions of the court's findings. This is hardly sufficient to certify an issue for interlocutory appeal.

Further, certification of any issues in this case would not serve the goal of § 1292(b) to avoid protracted and expensive litigation. The complaint in this case was filed on April 19, 2002. (Docket # 1). Over the next four years, both plaintiffs and defendants filed various motions, including motions to stay this action due to pending criminal investigations. Discovery in this case was conducted and closed on June 27, 2006. On September 28, 2006, the court entered its Order, granting in part and denying in part defendants' motion for summary judgment. A jury trial is currently set in this matter for March 27, 2007. This litigation has been protracted for over four years. Now, after dispositive motions have been filed and ruled upon by the court, and the issues are ready for trial in March, defendants seek certification for interlocutory appeal of two issues. This is not the exceptional case which Congress contemplated in enacting § 1292(b).

Plaintiffs' motion for certification for interlocutory appeal is DENIED.

## C. Leave to Amend

Finally, plaintiffs seek leave to file a third amended complaint. Plaintiffs seek to add a new claim based upon their allegation that the search warrant at issue in this case was so overbroad that it violated plaintiffs' constitutional rights.

Once the court has entered a pretrial scheduling order pursuant to Rule 16, the standards of Rule 16 rather than Rule 15 govern amendment of the pleadings. *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607–08 (9th Cir.1992); *Eckert Cold Storage, Inc. v. Behl,* 943

F.Supp. 1230, 1232–33 (E.D.Cal.1996).[8] A scheduling order is not "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985). Orders entered before the final pretrial conference may be modified only "upon a showing of good cause." Fed.R.Civ.P. 16(b). The good cause requirement of Rule 16 primarily considers the diligence of the party seeking the amendment.

■ When evaluating whether a party was diligently, the Ninth Circuit has determined that "the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end." *Id.* at 610. When the proposed modification is an amendment to the pleadings, the moving party may establish good cause by showing "(1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order." *Jackson v. Laureate, Inc.,* 186 F.R.D. 605, 608 (E.D.Cal.1999) (citations omitted).

■ Only after the moving party has demonstrated diligence under Rule 16 does the court apply the standard under Rule 15 to determine whether the amendment was proper. *See Mammoth Recreations,* 975 F.2d at 608; *Eckert Cold Storage,* 943 F.Supp. at 1232 n. 3.

■ As an initial matter, plaintiffs once again fail to discuss the substantive requirements of the applicable federal rule, in this case Rule 16, in their motion for leave to amend. However, plaintiff's counsel states that, "[i]n reading the Court's Memorandum and Order, dated September 28, 2006, co-counsel and I were alerted to the fact that the Second Amended Complaint does not expressly state a claim that the search warrant is constitutionally overbroad." (Decl. of Michael S. Sorgen in Supp. of Mot. to File Third Am. Compl., filed Oct. 27, 2006, ¶ 2). Plaintiffs' counsel did not acknowledge his own glaring omission until the court pointed it out in its Order. Now, after the dispositive motion deadline has long passed, plaintiffs' counsel's belated effort hardly demonstrates the requisite diligence required by Rule 16. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294–95 (9th Cir.2000) (denying the plaintiffs' motion to modify the pretrial scheduling order to allow amendment to the complaint where the motion was filed at the time of the plaintiffs' reply to the defendant's motion for summary judgment and where plaintiffs had knowledge of facts giving rise to the claim at least one year prior to the filing of the motion).

■ Further, even if plaintiffs' counsel could demonstrate good cause to amend the Pretrial Scheduling Order pursuant to Rule 16, plaintiffs cannot satisfy even the liberal requirements of Rule 15. Pursuant

---

8. To rely solely on Rule 15 after a pretrial scheduling order has been entered would "render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998); *see*

*also Mammoth Recreations,* 975 F.2d at 610 (adopting Rule 15's standards for amending the complaint would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier"); *Eckert Cold Storage,* 943 F.Supp. at 1232 n. 3.

to Rule 15(a), "leave [to amend] is to be freely given when justice so requires." "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Martinez v. Newport Beach,* 125 F.3d 777, 785 (9th Cir.1997). In this case, granting plaintiffs leave to file an amended complaint would cause undue delay and prejudice. Discovery has been completed. Dispositive motions have been ruled upon. The jury trial is set for March 27, 2007. *The facts underlying the proposed additional claim have been known to plaintiffs since the inception of the litigation in April 2002.* Plaintiffs had *four years* to file this motion to amend their complaint and failed to do so. Now, a few months before trial, plaintiffs seek to add a new claim. In light of such unexplained, dilatory conduct of plaintiffs' counsel, justice does not require such an amendment. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393 (9th Cir. 1986) (denying leave to amend under Rule 15, stating that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action").

Plaintiffs' motion to amend the pretrial scheduling order and for leave to file a third amended complaint is DENIED.

IT IS SO ORDERED.